No. 19,576.

CLARA CHAPMAN, *Appellant,* V. GEORGE FARRELL, as Sheriff, etc., and EMMA L. MONTGOMERY, *Appellees.*

SYLLABUS BY THE COURT.

1. FRAUDULENT CONVEYANCES—*Hindering and Delaying Creditors—Evidence.* In a transfer of property from a husband to his wife where it was charged that it was done to hinder, delay and defeat the enforcement of a judgment against the vendor or the collection of a debt the facts and circumstances of the transaction are to be closely scrutinized to see that it is free from fraud; and if the evidence shows that the sale was made by him to hinder and delay creditors it amounts to a fraud on his part, and if she had knowledge of his purpose or of facts and circumstances from which such knowledge may be inferred and cooperated with him in carrying out the purpose the transfer is invalid as to her.

2. SAME — *Adequate Consideration — Good Faith Required.* It is not enough that she may have paid him a sum equal to the value of the property transferred but it must have been made in good faith; the element of good faith is as essential to a valid transfer as an adequate consideration.

3. SAME—*No Error in Instruction.* No error was committed in instructing the jury that direct and positive evidence of fraud is not required or in telling the jury that:

"It is rare, indeed, that fraud can be proved by direct and positive testimony of reliable witnesses. It is an almost invariable rule that it can only be deduced from a consideration of many facts and circumstances; from the conduct, statements, dealings and surroundings of the parties, from their relationship to each other, and from the many little doings of the parties which indicate their secret motives, which as a rule are studiously concealed from those it is intended to wrong. Any unusual or extraordinary methods, if any, which they adopted in conducting business; any secrecy or concealment in business and any unusual methods or acts connected with the transactions in question in the case are proper to be considered in determining whether fraud in fact exists in connection with the transaction."

4. SAME—*Mutual Design to Defraud—Competent Evidence.* Where there is a *prima facie* showing of a mutual design on the part of the vendor and vendee to hinder, delay and defraud a creditor the acts and declarations of each relating to the transaction may be received in evidence.

5. SAME—*No Material Error in the Record.* The instructions herein examined and found to be without material error, and it is further held that the verdict is supported by the evidence.

Appeal from Phillips district court; WILLIAM S. LANGMADE, judge. Opinion filed December 11, 1915. Affirmed.

*T. M. Sullivan,* of Logan, *W. A. Barron,* of Phillipsburg, *W. E. Mahin,* of Osborne, *F. W. Mahin,* and *I. M. Mahin,* both of Smith Center, for the appellant.

*R. Frank Stinson,* of Phillipsburg, *S. N. Hawkes,* of Topeka, and *J. G. Hutchison,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by Clara Chapman against George Farrell, as sheriff of Phillips county, to recover possession of a stock of drugs and damages for their detention. Plaintiff alleged that on and before June 26, 1911, she was the owner and entitled to the possession of the drug stock, and that defendant had wrongfully taken and detained the drugs, to her damage in the sum of $1500. On Farrell's motion Emma L. Montgomery was made a party de-

fendant, and both filed general denials to plaintiff's petition. It appears that on April 26, 1911, Emma L. Montgomery recovered a judgment amounting to $1600 against H. J. Chapman, plaintiff's husband, and on June 26, 1911, caused execution to issue against the stock of drugs herein involved as the goods of H. J. Chapman. At the time of the recovery of this judgment the drug business was conducted by and in the name of H. J. Chapman, who was a registered pharmacist. After the recovery of this judgment a bill of sale for the stock of drugs, dated June 12, 1911, and a deed for certain property, both reading from H. J. Chapman to plaintiff, were filed for record on June 17, 1911, nine days before the levy of execution. On the trial of the case the jury found for defendants, and the plaintiff appeals from the judgment that was rendered against her.

The theory of the defendant was that the transfer of the stock of drugs from Chapman to his wife was not made in good faith but for the purpose of hindering, delaying and defrauding his creditors. It is insisted by the plaintiff that the evidence does not support the claim of fraud or the finding of the jury that the transfer of the stock was fraudulent and invalid. It is urged that even if it were conceded that Chapman was actuated by a fraudulent purpose there is no proof that his wife had any part in it or any knowledge of his fraudulent purpose. A number of circumstances in the case strongly tend to show that the transfer was not made in good faith. When the Montgomery judgment was rendered Chapman owned at least a half interest in the stock of drugs, his wife claimed to be the owner of the other half, and he was in possession of the same, and from the record he appeared to be the owner of considerable real estate. He then stipulated that he would not move for a new trial or contest the matter further, but would pay the judgment within sixty days if execution was stayed that length of time, and this agreement was sanctioned by the court and made a part of the judgment entry. Instead of paying the judgment in accordance with this agreement, he undertook to transfer the stock to his wife. On June 17, 1911, just a few days before the expiration of the stay, Chapman placed on record a bill of sale of the drugs, dated June 12, 1911. On the same day he placed on

record a deed from himself to his wife of the date of 1903, which purported to transfer the lots and building where the drug business was carried on, as well as another lot and building, and also some acre property, thus attempting to strip himself of all of his property which was not exempt from execution.  He then repudiated his agreement, and not only failed to pay the judgment but presented a motion for a new trial, and took an appeal from the refusal of the court to grant it as well as other adverse rulings.  He states that he owed other debts than the Montgomery judgment, and that the sale was made to pay his honest obligations, but the evidence warrants the inference that the transfer was made with the intention to delay and defeat the payment of the judgment. The plaintiff knew that the judgment had been obtained against her husband and that he did not intend to use any of the money procured through the transfer and the loan towards its payment.  She said that she paid for the drugs by executing a note and mortgage in favor of one Bishop, and that these were turned over to her husband, who obtained the money on them.  She further testified that she understood the money was to be used to pay Chapman's honest debts and that she did not loan it to him to pay the Montgomery judgment. She admits that she talked over with him the matter of his indebtedness and understood that he regarded the judgment to be unjust and that he would not apply any of the money raised by the loan towards its payment, but that he did intend to apply it on what she called her husband's "honest debts." The evidence justifies the inference that she knew of Chapman's trouble with Emma L. Montgomery, knew of the judgment that had been obtained against him, the collection of which he was endeavoring to defeat, and further, that she knowingly coöperated with him in an effort to hinder, delay and defeat the enforcement of that judgment.  It appears that he conducted the negotiations with Bishop for the loan, that the checks paid by Bishop were drawn in Chapman's favor, and that he presented them at the bank and obtained the money on them.  It further appears that he continued in charge of the store after the bill of sale was executed.  While letterheads, statements, checks and other printed forms used in the business indicated that Mrs. Chapman was proprietor

Chapman v. Farrell.

of the store, he controlled and managed the business practically the same after the bill of sale was made as he did before that time. Goods were shipped to H. J. Chapman, Manager, and she testified that he took drugs from the store to be used in his practice for which she never made any charge, and also that she never paid him any salary or compensation for working in the drug store.

There is evidence that she received $70 from her father's estate, and that in 1897 she got $1000 from her grandfather which was put into the drug business, and it is insisted that as she had sufficient means and had paid a sufficient consideration she had the right to make a valid purchase from her husband. The payment of the consideration is a controverted matter, but even if it were granted that she had means sufficient to make the purchase and that she had given her husband the equivalent of the value of the goods, it would not necessarily follow that the transfer was valid. The payment to him of a sum equal to the value of the goods does not save the transfer if it was made in bad faith and with the intent to hinder and delay creditors.

"That good faith is as essential to support a sale like the one before us, as a sufficient consideration, will not be questioned." (*Phillips v. Reitz*, 16 Kan. 396, 399.)

Nor is it enough that he expected to pay the debt at some time when it became convenient for him to do so. If Chapman made the sale for the purpose of hindering or delaying Montgomery or any other creditor in the collection of the debt it is a fraud in law, and if his wife knowingly assisted him in effecting that purpose she is deemed to be a participant in the fraud and acquires nothing by the transfer. (*Buck v. Vickers*, 93 Kan. 766, 145 Pac. 904.) It is true that a debter may honestly prefer creditors, and if she was a creditor of his he could have preferred her, but it is essential that it be done in good faith. It is true, too, as plaintiff contends, that a fraudulent purpose on the part of Chapman would not affect his wife if she made the purchase in good faith and for an adequate consideration, but in cases like this, where the transfer is from husband to wife, the circumstances are to be closely scrutinized to see that it is free from fraud. The jury has, in effect, found

that she was a participant in the fraudulent purpose, and there appears to be some evidence to support the conclusion.

Complaint is made of the refusal to give an instruction requested by plaintiff to the effect that her husband's fraud if proven would not affect the validity of the transfer if she had no knowledge or notice of his fraud, but it appears that in an instruction given the court advised the jury as to the necessity and effect of the knowledge of the fraud of a vendor or of facts and circumstances from which such knowledge might be inferred. This phase of the case was sufficiently covered by the court. No error was committed in giving the fifteenth instruction, which called attention to the difficulty of proving fraud and in which the court stated that it is not required to be proven by direct and positive testimony but might be deduced from many facts and circumstances, such as the relationship of the parties, their conduct, statements, their secrecy or concealment, or unusual and extraordinary methods employed by them in connection with the transaction. (*Morse v. Ryland*, 58 Kan. 250, 48 Pac. 957.)

Complaint is made of other instructions because the court ignored the question of the knowledge or notice of the vendor's fraudulent purpose, but, as we have seen, the court had made this a necessary ingredient of recovery against the plaintiff in other parts of the charge, and a repetition of the rule was not necessary nor was the omission misleading.

A witness who was attorney in the Montgomery case was permitted to testify that he had examined the records about the time the judgment against Chapman was rendered and had ascertained what property stood in the name of Chapman and did not learn or know that any part of the property levied on belonged to Mrs. Chapman. He further stated that he consented to the stay of execution for sixty days on the theory that Chapman was the sole owner of the property, but that on coming into the courtroom one day he found that Chapman was moving for a new trial in violation of his agreement. It is contended that this testimony was incompetent as against Mrs. Chapman because she was not a party to the Montgomery case and had no knowledge of the proceedings in it. The theory of the defendants is that the stay was obtained to enable

Chapman to dispose of his property and place it beyond the reach of an execution and that plaintiff was knowingly assisting in carrying out this purpose, and there is some evidence to support the theory. Where there is a *prima facie* showing of a mutual design of the vendor and vendee to defraud a creditor the acts and declarations of each relating to the transaction may be received in evidence. The stipulation for a stay of execution was therefore competent evidence against the plaintiff, and, besides, it was a part of the judgment entry which was in evidence for other purposes. The opinion of the witness that when he consented to the stipulation after an investigation of the record he believed that Chapman owned the property was hardly competent evidence for any purpose, but manifestly it was not prejudicial.

Personal-property statements in which Chapman listed the drug store for taxation as his own property were received in evidence over the objection of the plaintiff. As the statute requires a person who lists property of others to list such property separate and apart from his own, and further to specify the person, estate, company or corporation to which it belongs, the statements were admissible and had some probative value. (Gen. Stat. 1909, § 9223.)

Complaint is made that certain entries in books offered in evidence were excluded. This testimony was offered upon the theory that the property belonged to the plaintiff and was wrongfully seized upon an execution against her husband, and to show the damages sustained by the plaintiff in case it was found that she was the owner and entitled to the possession of the property. It having been determined that she was not entitled to the possession of the property the question of damages is of no materiality.

Some other objections are made but they are not deemed to be material, and finding no substantial error in the proceedings the judgment is affirmed.