No. 32,742

Mabel Benson Sakis and George P. Sakis, *Appellants*, v. Mary T. Sawyer, C. A. Sawyer, Rosalie B. Peterson, and Harry T. Peterson, *Appellees* (Benjamin S. Benson, Charles E. Benson, William Frank Benson, and Earl L. Benson, Interpleaders).

(57 P. 2d 52)

Opinion filed May 9, 1936.

*R. H. Thompson,* of Gove City, and *H. L. McCormick,* of Washington, D. C., for the appellants.

*John R. Parsons,* of Wakeeney, *Milton A. Roberts,* and *Newton W. Roberts,* both of Ottumwa, Iowa, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This action involves a suit for money judgment on a written contract for the sale of undivided interests in real estate, attachments of defendants' interests therein, an attempt to set aside alleged fraudulent deeds conveying such interests from defendants to interveners, and an attempt by plaintiffs to collect rents to apply on their judgment, which rents defendants and intervenors appropriated from the lands in question, beginning with the date of the execution of escrow deeds.

Some of the rents had been appropriated and withdrawn by defendants and interveners. Some of them are on deposit with the clerk of the district court pending final determination of this action. The trial court rendered a money judgment in favor of plaintiffs and against defendants for the unpaid purchase price, set aside

the alleged fraudulent conveyances and sustained the attachments, but refused to render judgment directing defendants and interveners to return rents appropriated, and refused to direct the application of rents in the hands of the clerk to the unsatisfied portion of the judgment. The trial court also refused to allow damages claimed by plaintiffs in the nature of expenses incurred in prosecuting this and other actions and reasonable attorney fees. From the judgment involving the rents and damages plaintiffs appeal. Interveners appeal from the judgment setting aside the conveyances. The issues on this appeal are therefore between plaintiffs and interveners.

Prior to the execution of the contract on which plaintiffs' suit is based, the parties who had undivided interests in the real estate involved were the plaintiff, Mabel Benson Sakis, the defendants, Mary T. Sawyer, and Rosalie B. Peterson. These two defendants named are sisters of the four Bensons brothers, interveners. Plaintiff George P. Sakis is the husband of plaintiff Mabel Benson Sakis. Defendant C. A. Sawyer is the husband of defendant Mary T. Sawyer, and defendant Harry T. Peterson is the husband of defendant Rosalie B. Peterson. For convenience, interveners will be referred to as the Bensons, and the other parties as plaintiffs and defendants.

The trial court made findings of fact and conclusions of law. The findings of fact read:

"1. On December 1, 1928, the defendants, Mary T. M. Sawyer and Rosalie B. Peterson, were each owner of an undivided one-sixth (⅙) interest in all of the above-described real estate.

"2. On November 9, 1929, and other dates, Mary T. M. Sawyer, on her own behalf and as attorney in fact for Rosalie B. Peterson, executed and delivered warranty deeds conveying their interest in the above-described property to their brother, Ben S. Benson, as trustee; that these deeds were absolute on their face, although it is the claim of the interpleaders that at the time they were delivered they were given as security for a preëxisting debt.

"3. The court believes that the evidence warrants, and therefore finds, that at the time of the execution and delivery of the aforementioned deeds Mary T. M. Sawyer and Rosalie B. Peterson were not indebted to any of the interpleaders in any sum whatsoever; that Mary T. M. Sawyer had, some years prior to that date, obtained some financial assistance from the interpleader, Ben S. Benson; that the money advanced was not intended as a loan but as a gift, and did not exceed the sum of one thousand dollars ($1,000).

"4. That no deficiency existed under the agreement offered in evidence, dated June 4, 1925, between the defendants and interpleaders, and at the time the confession of judgment was obtained the defendants were not liable to the interpleaders in any sum whatsoever; that the deeds above referred to were given for the purpose of defeating the claims of the plaintiffs, and in an

attempt to save the above property from levy to satisfy such claim; that they were given without consideration.

"5. That after the execution and delivery of the deeds aforementioned the interpleaders received their one-sixth (⅙) share of the rents from the above-described land; that the aforementioned deeds were executed and delivered by the defendants to the interpleader, Ben S. Benson, as trustee, for the purpose of hindering, delaying and defrauding the plaintiffs who were creditors of the defendants, and that such facts were known to both defendants and interpleaders."

The conclusions of law read:

"1. That the plaintiffs are entitled to a decree setting aside and holding void the deeds to the aforementioned Kansas land executed by defendants in favor of Ben S. Benson, trustee.

"2. That the proceeds of the sale of the crops raised on the above described land, which proceeds are now in the hands of the clerk of the district court of Gove county, Kansas, are not subject to the attachment order herein.

"3. That the plaintiffs should be entitled to have the interest of the defendants in the above-described property sold to satisfy the judgment herein; that the costs herein should be taxed against the defendants and interpleaders jointly, and that such costs are a lien upon the proceeds of the crops now in the hands of the clerk of the district court of Gove county, Kansas."

Plaintiffs filed exceptions to certain findings and conclusions and requested supplemental findings of fact and conclusions of law which were overruled, except as to one finding of fact which the court embodied in the final judgment. That additional finding of fact reads:

"That the interpleaders have no right, title, lien or other interest in or to the following-described real estate, to wit: (description), and that any and all instruments executed by any of the defendants conveying or attempting to convey any interest in or to any or all of said real estate to Ben S. Benson, trustee, shall be and they are hereby canceled, set aside and held for naught; that all of such purported deeds were made without consideration and for the purpose of hindering, delaying and defrauding the plaintiffs, who were at the time of the execution and delivery of such deeds creditors of the defendants, and such deeds were executed for the purpose of hindering, delaying and defrauding the plaintiffs from the collection of their claims against the defendants, and that such was known both to the defendants and interpleaders; that such instruments were executed without consideration and should be set aside and held for naught. The court further finds that the interest of the defendants, Mary T. M. Sawyer and Rosalie B. Peterson, and the inchoate interests of their respective husbands, are subject to attachment lien herein, and that such lien should be, and the same is hereby sustained."

The pertinent portion of the final judgment from which plaintiffs appeal reads:

"The court further finds that the attachment lien herein does not cover the crops grown on said land; that the plaintiffs did not. have a lien on said crops

by virtue of said attachment; that the court is without jurisdiction to render a judgment or enter any order affecting said crops or the proceeds thereof, which are now in the hands of the clerk of this court.

"The court further finds that it does not have jurisdiction to determine the question of damages as raised by the reply of the plaintiffs to the interplea of the interpleaders in this action."

The Bensons requested certain findings of fact and conclusions of law and also filed a motion requesting the court to set aside certain findings and to render judgment in their favor. These were overruled. Both parties filed motions for new trial which were also overruled.

We shall first consider the complaint of the Bensons, the alleged fraudulent grantees. The court found the conveyances from defendants to the Bensons were without consideration and fraudulent. It specifically found the deeds were executed and delivered with the purpose and intent of hindering, delaying and defrauding the plaintiffs. The Bensons accepted those deeds. The court expressly found the fraudulent intent of the defendant grantors was known to the Bensons. Does the evidence support the findings of the trial court? The action was tried to the court. The parties have devoted about 122 pages solely to pointing out where the record was misstated by the other party. The result is we have been obliged to largely abandon the abstract of both parties and examine a voluminous transcript and numerous exhibits. The findings of fraud are based on both direct and circumstantial evidence. Some of the evidence was sharply conflicting. This condition of the record presented a question for the determination of the trial court. It would require many pages to relate only the most essential facts. They would add little or nothing to the opinion. The court determined the credibility of the witnesses and the weight of the evidence. After a careful examination of the record we cannot say the trial court erred in its findings of fraud. There was an abundance of competent evidence, if believed—and it was believed—to support the court's findings. In this condition of the record we are not permitted to disturb the findings of the trial court.

With regard to the circumstantial evidence the trial court was obliged to do just what a jury would have been required to do. In the case of *Chapman v. Farrell,* 96 Kan. 659, 153 Pac. 511, it was held:

"No error was committed in instructing the jury that direct and positive evidence of fraud is not required, or in telling the jury that—

" 'It is rare, indeed, that fraud can be proved by direct and positive testimony of reliable witnesses. It is an almost invariable rule that it can only be deduced from a consideration of many facts and circumstances; from the conduct, statements, dealings and surroundings of the parties, from their relationship to each other, and from the many little doings of the parties which indicate their secret motives, which as a rule are studiously concealed from those it is intended to wrong. Any unusual or extraordinary methods, if any, which they adopted in conducting business; any secrecy or concealment in business and any unusual methods or acts connected with the transactions in question in the case are proper to be considered in determining whether fraud in fact exists in connection with the transactions.' " (Syl. ¶ 3.)

The conveyances could have been set aside even though the intent had not been to ultimately defraud plaintiffs, but in fact had only been to hinder and delay them in the collection of their debt. (*Buck v. Vickers*, 93 Kan. 766, 145 Pac. 904; *Chapman v. Farrell*, 96 Kan. 659, 153 Pac. 511; *Security Benefit Ass'n v. Swartz*, 141 Kan. 227, 232, 40 P. 2d 433.) ·

Where a grantee has knowledge of the fraudulent transfer he acquires nothing by virtue of the conveyance. In *Chapman v. Farrell*, supra, it was held:

"In a transfer of property from a husband to his wife, where it was charged that it was done to hinder, delay and defeat the enforcement of a judgment against the vendor or the collection of a debt, the facts and circumstances of the transaction are to be closely scrutinized to see that it is free from fraud; and if the evidence shows that the sale was made by him to hinder and delay creditors it amounts to a fraud on his part, *and if she had knowledge of his purpose or of facts and circumstances from which such knowledge may be inferred and coöperated with him in carrying out the purpose the transfer is invalid as to her.*" (Syl. ¶ 1.) (Italics inserted.)

In dealing with the question of the rights of a fraudulent grantee to retain rents converted, Bump, in his work on Fraudulent Conveyances (4th ed., §§ 625, 626) says:

"The grantee may be charged with the rents and profits of the lands. This was the Roman law, and it is true under our own system of jurisprudence.

"It certainly is not consonant with the principles of the law that the grantee should derive any advantage from his fraud. Consequently, he may be compelled to account for the profits from the time of the transfer. An account may also be taken of what has been received as compensation for the use of the property."

In the case of *Allen v. Berry et al.*, 50 Mo. 90, it was held:

"The fraud renders the deed absolutely void as to creditors, and plaintiff is entitled to recover the property and its rents, etc., as though no such fraudulent deed ever had been made." (Syl.)

In the instructive and well-reasoned case of *Loos et al. v. Wilkinson et al.*, 110 N. Y. 195, 214, it was said:

"Judgment creditors of a fraudulent grantor may compel the fraudulent grantee to account for the rents and profits of the real estate conveyed from the time he enters into possession under the conveyance." (18 N. E. 99, headnote ¶ 6.)

In the case of *Kitchell, Adm'r, v. Jackson*, 71 Ala. 556, it was held:

"In cases of actual fraud a fraudulent grantee must be considered as a trustee of the rents and profits, as well as of the corpus, of the property conveyed, and as holding them in the right, and for the benefit of attacking creditors; and hence, where a conveyance of land has been declared void for actual fraud, on bill filed by creditors of the grantor, the grantee is chargeable with rents." (Syl. ¶ 1.)

In the case of *Salt Springs Nat. Bank v. Fancher*, 36 N. Y. S. 742, it was said:

"Where the grantee had the use of the land, he was chargeable with its rental value, though he received no rent." (Headnote ¶ 3.)

In the case of *Jones et al. v. McCleod et al.*, 61 Ga. 602, it was said:

"It seems to us that it is a thousand times more equitable to saddle, in this way, a trust upon the rents and profits, than for creditors to go unpaid. And if resort to this means of satisfaction be allowed only in cases of absolute necessity, the receiver of the rents and profits, who took his title, or pretended title, with notice of the fraud, has no reason whatever to complain. It is treating him quite as leniently as he has any just right to expect. He is made a trustee to prevent injustice, not to the fraudulent grantor, his heirs or representatives, but to the innocent creditors of the grantor." (p. 607.)

Although the Bensons acquired no interest in the property, they did in fact collect and convert rents from the property to which they were not entitled. The profits derived are the immediate result, and flow directly out of the fraud in which the Bensons participated by knowingly accepting the fraudulent deeds. From the record it appears defendants received the sum of $3,400, and the Bensons the sum of $6,800, from crops for the six years from 1929 to 1934, inclusive. The trial court refused to render judgment against the Bensons and defendants for the proceeds of the crops so converted, on the ground plaintiffs did not have an attachment lien on the crops. The principle of applying rents fraudulently converted, in this situation, is not based upon rights under an attachment lien. It is grounded in equity. This was a suit in equity. It was brought to set aside fraudulent conveyances and essentially to compel the specific performance of a contract to pay for land purchased. Sit-

ting as a court of equity, the court had adequate power and authority to do full and complete justice by the parties with regard to all matters flowing directly from the fraudulent transaction. Neither defendants nor the Bensons should be permitted to profit by their own fraud in withholding the proceeds from the crops. The same is true with regard to a fund now on deposit with the clerk of the district court, the exact balance of which does not clearly appear. It consists of proceeds from the sale of some crops and apparently some wheat-allotment money which was due to the rightful owner of the land. This fund was deposited upon stipulation pending the final determination of this suit, with the provision such deposit should not prejudice the rights of the parties. Under stipulation, checks were also drawn on this amount for taxes on the land and for the removal of bindweed. The court refused to apply this fund to the unpaid balance of plaintiffs' judgment on the ground it had no jurisdiction over the fund. In the nature of this action and under the circumstances narrated, the court had full jurisdiction over the fund. The land was sold under the attachment lien. It did not bring enough to satisfy the judgment. In order to prevent the consummation of the fraud, both the rents converted by defendants and by the Bensons, and the fund on deposit, should have been and are hereby ordered applied to the unpaid balance of plaintiffs' judgment. Judgment is hereby ordered in favor of plaintiffs and against defendants, for the amount of rents converted by them in the sum of $3,400, and against interpleaders, the Bensons, for rents converted by them in the sum of $6,800, upon the condition that only so much thereof be collected as together with the amount on deposit with the clerk of the district court will fully discharge the unpaid balance of plaintiffs' judgment.

In determining the amount due plaintiffs the trial court is directed to calculate interest at six percent on the original judgment of $35,-000, from the first day of April, 1929, to the date of the attachment sale. On the amount of principal and interest then due the court is directed to credit the amount of the purchase price, less all costs of the action and sale, including any taxes which may have been paid out of the proceeds of such sale. The new principal is to bear interest at six percent from date of sale. The rents converted by defendants and the Bensons, together with the fund on deposit, are directed applied on the unpaid balance of plaintiffs' judgment and total costs to the extent necessary to satisfy the unpaid balance thereof.

It is so ordered.