E. H. LUIKART, RECEIVER, APPELLANT, V. INA B. BOSSE ET AL., APPELLEES.

5 N. W. (2d) 128

FILED AUGUST 7, 1942. No. 31242.

*M. S. McDuffee* and *F. C. Radke,* for appellant.

*Frederick M. Deutsch, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is a suit in equity in the nature of a creditor's bill, to vacate the conveyance of 240 acres of land in Madison county, Nebraska, made by the debtor, William H. Bosse, to his wife, Ina B. Bosse. The court found for the defendants and entered a decree accordingly. Plaintiff's motion for a new trial was overruled; hence, this appeal.

The petition alleges that a judgment for stockholder's double liability was obtained against William H. Bosse and details the facts relating to the conveyances of real estate made by him to his wife for the purpose of hindering, delaying and defrauding creditors and especially the plaintiff. The answer is, in effect, a general denial and sets forth in detail evidentiary matter in explanation of the entire transaction. The reply is, in effect, a general denial. All of the evidentiary matter, as disclosed by the pleadings, material to a determination of this case will appear in a review of the evidence.

The record discloses: William H. Bosse and Ina B. Uehling were married at Bloomfield, Nebraska, July 1, 1904,

where they resided until 1910, when they removed to Meadow Grove, where Mr. Bosse engaged in the banking business until November 1, 1928. Since 1921, when he purchased sufficient stock of the Security Bank of Meadow Grove to give him control, he has been the president and sole managing officer thereof. The bank was taken over in suspension October 31, 1928, by the department of banking, reorganized and restored to its officers and stockholders on December 11, 1928, without the services of Bosse, until the fall of 1929. Bosse had 126 shares of the bank's stock before the reorganization and 14 shares thereafter. The bank was permanently closed September 7, 1929. The plaintiff was appointed receiver, brought an action against Bosse and others to collect their superadded stock liability, and obtained a judgment against Bosse on September 28, 1939, in the amount of $2,005.59. Execution was issued on the judgment January 29, 1940, and returned unsatisfied.

The land constituting the subject of the conveyances consists of a mile-long quarter-section, commonly known as bottom and swamp land, with the south end in the Elkhorn valley. The north part is raised and includes a gravel pit which was operated commercially in a small way by those who desired to patronize it. Later a pump was installed, and on June 18, 1929, Mrs. Bosse sold 20 acres, comprising the gravel pit, for $11,000 to a purchaser who had a road contract with the state. Bosse testified that in the fall of 1928 this quarter-section was worth $20,000, encumbered by a 12,000-dollar mortgage to the Commonwealth Life Insurance Company, leaving an equity of $8,000; that the 80 acres were rolling, consisted of Valentine sandy soil, with 25 acres under cultivation, and encumbered in the amount of $2,500. Ina B. Bosse was negotiating to turn this land in for the loan.

On October 22, 1928, Bosse and his wife conveyed to J. F. Uehling, a brother of Mrs. Bosse, for a consideration of $17,000, subject to a 12,000-dollar encumbrance, the quarter-section, and on the same day a similar deed to the 80 acres to F. J. Uehling for a consideration of $3,500, subject to a

2,500-dollar mortgage. The initials of the grantee in the first deed were transposed, and F. J. Uehling is the proper grantee. These deeds were placed on record November 1, 1928. The above conveyances were made pursuant to an agreement between Mr. and Mrs. Bosse and F. J. Uehling, whereby the latter, an insurance executive and promoter, was endeavoring to procure a small insurance company in Texas by trading the equities in such real estate for the company; the stock obtained therein, in the amount of such equities, was to be taken in the name of Ina B. Bosse, to evidence indebtedness from her husband to her, and Bosse was to have employment in the company, as they had a desire to leave the sand-hills. These deeds would show the equity to be $6,000 in the two farms. When Bosse conveyed the land to Uehling, the only property he had left was a house, in which they lived, mortgaged for $4,000 (since lost through foreclosure instituted by Home Owners Loan Corporation), the bank stock and an automobile. The agreement provided that, upon failure of Uehling to consummate the deal, the land should be deeded to Ina B. Bosse in payment of indebtedness owing her by her husband. This agreement does not appear in the record. There is some testimony that a memorandum of it was made in writing. F. J. Uehling failed to consummate the deal, and on December 28, 1928, he reconveyed the real estate to Ina B. Bosse in the same form and manner as the deeds from Bosse and his wife to Uehling were made. The conveyance of the 160 acres was filed of record June 19, 1929, and of the 80 acres December 20, 1934.

The claimed indebtedness of Bosse to his wife has its origin in the estate of her father, Fred Uehling, who died testate in Knox county, Nebraska, in March, 1914. He was a banker, grain, stock, hardware and lumber dealer, and a farmer, and a man of considerable wealth. His will provided that Mrs. Bosse, as well as his other children, would receive a 1,000-dollar bequest each, and that all the rest, residue and remainder of his real and personal property would go to his wife, Marie Uehling, the latter being nominated his executrix, and at her death, after certain provisions of the

will were complied with, he devised and bequeathed to his sons and daughters, share and share alike, the remainder.

In 1919, by concurrence of the mother and children, a large part of the real estate holdings of Fred Uehling's estate was sold, and Marie Uehling took the funds received from the sale in her possession as a life tenant. In addition to the real estate holdings, Fred Uehling left his widow life insurance in the amount of $6,000 or $7,000, and a block of stock in the Commonwealth Life Insurance Company, of Omaha, carried in the name of the son, F. J. Uehling, president of the company. Instead of investing this money in loans to strangers, Mrs. Uehling from time to time advanced funds she held in trust as life tenant to her several children as remaindermen, and to evidence such indebtedness took their notes. The money so received by Ina B. Bosse was loaned to her husband, and in this respect the record reflects the following: Note dated May 1, 1919, $4,000, signed by W. H. and Ina B. Bosse; note dated November 25, 1922, $3,500, signed by Ina B. Bosse; note dated January 2, 1923, $2,000, signed by Ina B. Bosse; and a note dated May 1, 1923, $1,500, signed by W. H. and Ina B. Bosse, making a total of $11,000. The first note was payable five years after date; the other three payable on demand, and all with no interest stated.

Mrs. Bosse testified that this money was given to her husband, and he testified he used it for business purposes and placed it to his credit in the bank, and gave his wife notes evidencing his indebtedness to her. The only notes appearing in the record are: One dated December 1, 1925, in the amount of $11,410.59, and one dated January 1, 1928, in the amount of $12,337.49. Both notes bore interest at 6 per cent., and the interest was added each time a new note was given. There is controversy in the evidence to the effect that the plaintiff was satisfied that this money was shown to the credit of Bosse, with the exception of a 2,000-dollar item. This is denied in part, and the bank records do not accurately reflect the amounts received from Ina B. Bosse or the dates on which such amounts were placed to Bosse's credit,

but, in fact, the amounts were different in proportion, and from different members of the family, *i. e.* Marie Uehling and F. J. Uehling; also from the Commonwealth Life Insurance Company, and remittances of $3,000 from Mrs. Bosse. Bosse contended that there were three accounts, viz., his own, one known as the Bosse-Harding account, and the W. H. Smith account. The two latter accounts do not appear in the record. It is obvious that the bank accounts, under such arrangement, would not convey the exact status of the money to Bosse's credit. It is apparent that appellees rely upon the positive testimony of Mr. and Mrs. Bosse that the loans were made and were corroborated by the notes as heretofore stated. There are other items reflected by the record, one known as the 8,000-dollar loan from Marie Uehling, which apparently was managed by Emil Uehling (a brother of Mrs. Bosse), who brought the money to Bosse, to be used for investment purposes. This was in 1926.

There is some evidence that the Ruegge land was required to be taken out of the bank, and to accomplish this at least $8,000 was used, together with other moneys, and a sale to one Warrick. It is needless to trace the ramifications of this deal. The sum total is that it resulted in two houses being deeded to Mrs. Bosse in the amount of $11,600, one of which was sold on terms for $2,400, and one upon which a Home Owners Loan was obtained, later foreclosed, with the net result that there was still owing Marie Uehling approximately $3,100 at the time of her death December 20, 1929. Uehling received the deed to the Ruegge land from the bank after foreclosure by the bank, which held a subordinate 15,000-dollar mortgage, approximately 10 days after the sheriff's deed was made to the bank. The 8,000-dollar loan is reflected by a 4,000-dollar mortgage upon five acres of the Ruegge land upon which buildings were situated, and a 4,000-dollar mortgage upon the Bosse home. On August 1, 1928, W. H. and Ina B. Bosse conveyed the Ruegge land to F. W. Warrick for a consideration of $41,600. Bosse testified that the $8,000 was loaned to him; other testimony was that it was loaned to Ina B. Bosse. In any event, she agreed to bind

her separate estate and to have any amount owing on the loan deducted from her distributive share of her mother's estate. The two houses were taken in her name because the family required it, and notes signed by W. H. and Ina B. Bosse appear in the record, evidencing indebtedness to the heirs.

The claimed indebtedness to Ina B. Bosse of $11,410.59, owing since 1925, is not reflected by tax returns showing the same. At the time of the conveyance of the land in question by Bosse to Uehling and subsequently by Uehling to Ina B. Bosse, Bosse managed the farms, collected the rents, paid the taxes, and paid taxes during the years 1934, 1935, 1936 and 1937. Ina B. Bosse testified that her husband attended to all of the business. Bosse testified that the bank was closed suddenly; that he telephoned the department on October 10, 1928, that several checks had come in which they could not handle. No record of the Bosse-Harding account is found, and the Smith account was Bosse's own account and pertained to investments in which Harding had no interest and items which Bosse wanted to separate so that they would not be in his personal account. No record of this account appears. Bosse further testified that, when one Otradovec was employed in the bank, an account was opened called "B & O" account. Marie Uehling credited interest on the back of notes received from her children, whether she actually received such interest or not, to avoid dissatisfaction among them, and in some instances, when she wanted or needed something and they provided it, she noted a payment of interest on their indebtedness. Bosse, in handling money he desired to invest, had a habit of making cashier's checks when he was going to use the money soon.

Section 36-401, Comp. St. 1929, provides in part: "Every conveyance * * * in writing * * * of any real estate or interest in lands, * * * made with the intent to hinder, delay or defraud creditors * * * of their lawful rights, * * * debts or demands, * * * shall be void."

"A conveyance is declared to be fraudulent when its object or effect is to defraud another, or the intent with which

it is made is to avoid some duty or debt due by or incumbent upon the party making the transfer." 27 C. J. 415.

"A conveyance from a husband to his wife is presumptively fraudulent as to an existing creditor, and in litigation between the creditor and grantee on that issue, the burden is on the latter to establish the good faith of the transaction by a preponderance of the evidence. *Christensen v. Smith*, 123 Neb. 388, 243 N. W. 118." *Butke v. Nachschoen*, 133 Neb. 366, 275 N. W. 318.

With the foregoing authorities in mind, the appellant contends that the trial court erred in that its decree is contrary to and not supported by the evidence, and is contrary to law. We have heretofore set forth a brief synopsis of the evidence. We now analyze such evidence and further facts disclosed by the record to determine whether or not the conveyances made were fraudulent.

On November 25, 1925, the Meadow Grove State Bank, competitor of Bosse's bank, was taken over by the guaranty fund commission. Six days thereafter, on December 1, 1925, Bosse gave to his wife his note for $11,410.59. On July 24, 1928, the Security Bank of Meadow Grove was examined by the department of banking. This examination showed: Overdrafts, $1,844.27; $3,300 of rediscounts on which the bank was liable, with net earnings from December 31, 1928, to July 24, 1929, of $36.98; the total charge-off in the same period, $2,184.19, and recovery from previous charge-off items, the sum of $2,435.79; slow paper, $125,795.52; doubtful paper, $25,466.65; probable loss estimated, $8,750, with $36,301.05 held by the Omaha National Bank as collateral for $25,000 borrowed from the same bank. The examiner stated that the solvency of the bank was doubtful, and under general remarks: "They should have an assessment to take out long standing doubtful paper." However, the examiner expressed the thought that to levy such assessment would be worse than if it were not levied, due to the existing conditions in the community. A detailed report was required of the bank, to be furnished by August 30, 1928. It was compiled October 10, 1928. In this

statement the cash reserve was 10 per cent. and had been for two years, while the law required 15 per cent. It is apparent that the closing of the bank on October 31, 1928, was not sudden, but, on the contrary, Bosse evidently knew the condition of the bank.

With reference to the debt due the bank from L. C. Ruegge, wherein it was claimed the bank received the benefit of certain notes signed by Bosse, Beach, Crook and others, these notes are not in evidence. The record does not show that the Ruegge land was carried as other real estate, or that any request was made to take this land out of the bank. No correspondence between the bank and the department with reference to this land appears in the record, nor is there evidence to show that the department knew of the deed or demanded that the land be taken out of the bank. The sheriff's deed to the bank is dated April 1, 1925, and the deed of the bank to Bosse is dated April 17, 1925, or 16 days later.

In the case at bar the deeds made to F. J. Uehling were voluntary; in fact, he gave nothing and promised nothing more or less than that he would endeavor to make the deal, as heretofore indicated. Ina B. Bosse would not be in any better situation than was her brother, F. J. Uehling, in this respect. He would have no defense to this action. Nothing ever came to Bosse from Uehling. The insurance company mentioned is not named in the record, nor its location, nor any information with reference to it. There is no correspondence between F. J. Uehling, or his sister, and Bosse with reference to it, and the alleged agreement is not shown in the record. The deeds from Bosse to F. J. Uehling were made October 22, 1928. July 12, 1928, Ina B. Bosse received the two houses in Meadow Grove from her husband through the J. W. Warrick transaction. The Security Bank suspended operation at the close of business October 31, 1928. The deeds to Uehling were filed November 1, 1928, the day the department took possession of the bank, and shortly after the lands were deeded to Mrs. Bosse by F. J. Uehling. She sold 20 acres constituting the gravel pit for $11,000. The transactions between Mr. and Mrs. Bosse, as disclosed by

the evidence, are so closely related in time to the events leading to the closing of the Security Bank and Bosse's liability connected therewith that they did not just happen in the ordinary course of events. The reason for the conveyances is apparent.

In *Hilton v. Clements*, 137 Neb. 791, 291 N. W. 483, this court held: "Where the testimony relied upon to show good faith is given by interested relatives, the reasonableness or unreasonableness of their evidence bears considerable weight in arriving at a just conclusion." In that case the court held that the "question of fraudulent intent is a question of fact and not of law."

We conclude from an analysis of all the evidence and the authorities cited that the conveyances in question were fraudulent as to the judgment creditor.

Some contention is raised with reference to the liability of Bosse in that, "Where it is alleged that conveyances of real estate were made to defraud existing creditors and the proofs show such conveyances were executed and delivered prior to the incurring of the indebtedness, the petition under the proofs will not sustain a decree in favor of the plaintiff." *Ayers v. Wolcott*, 66 Neb. 712, 92 N. W. 1036.

We are unable to agree that the above case is in point with the situation in the instant case. The petition here does not present a question with reference to future conveyances. It was alleged and proved that on October 22, 1928, William H. Bosse owned the land in question and deeded it to his wife's brother, F. J. Uehling, on the same day; that the Security Bank of Meadow Grove suspended business October 31, 1928; that the deeds to Uehling were filed for record November 1, 1928; that the Security Bank was restored to the stockholders December 11, 1928; that Uehling deeded the land to Ina B. Bosse December 28, 1928; that on October 22, 1928, Bosse was the owner of 126 shares of the capital stock of the Security Bank; that on December 11, when the bank was restored to the stockholders, he was the owner of 14 shares. The deeds to Ina B. Bosse were made 17 days after Bosse became the owner of the 14 shares and after he ac-

quired the stock; she did not become the owner of the property until after the 14 shares were issued. Ina B. Bosse did not have title to the real estate until December 28, 1928. Under such circumstances, the case of *Ayers v. Wolcott, supra*, is not applicable.

Record examined, and the evidence in the instant case is found insufficient to sustain the burden of proof to show by a preponderance thereof the *bona fides* of the conveyances.

The judgment of the trial court is reversed and the cause remanded, with directions to enter judgment in favor of the plaintiff and against the defendants as prayed in plaintiff's petition.

REVERSED.