FIRST NATIONAL BANK OF OMAHA, A CORPORATION, APPELLEE, AND CROSS-APPELLANT, V. FIRST CADCO CORPORATION, A CORPORATION, ET AL., APPELLEES AND CROSS-APPELLEES, IMPLEADED WITH MICRO DATA CORPORATION, INC., ET AL., APPELLANTS AND CROSS-APPELLEES.

203 N. W. 2d 770

Filed January 26, 1973. No. 38471.

554

Young, Kuhn, Person & Liakos and Gaines, Spittler & Otis, for appellants.

Dwight J. Moore and Swarr, May, Smith & Anderson for appellee First Nat. Bank.

Keith Miller, Harry B. Otis, and L. J. Tierney, for appellees First Cadco Corp. et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This action, in the nature of a creditor's bill, was brought by the plaintiff, First National Bank of Omaha, against the defendants Micro Data Corporation, Inc., Robert Lucas, and others, the purpose of which was to have declared void certain conveyances of real estate made by Charles C. Lukovsky to the defendant Micro Data and to enjoin the defendant Micro Data from making disposition of certain property alleged to constitute the proceeds of such conveyances. Plaintiff also prayed for general equitable relief. The foundation of the plaintiff's claim is the allegation that the conveyances were made in violation of the plaintiff's rights as a creditor of Charles C. Lukovsky and with the intent to hinder, delay, and defraud the plaintiff in the collection of its debt.

The plaintiff also alleged that one of the defendants, Evelyn Lucas, a debtor of the plaintiff and coobligor with Charles C. Lukovsky, had transferred to her now deceased husband, Joseph F. Lucas, an interest in certain real property with intent to hinder, defraud, and delay the plaintiff in the collection of its debt; that this had been done with the advice and counsel of the defendant Robert Lucas; that she had permitted Robert Lucas to come into possession of the proceeds of the transfer together with proceeds of her husband's share of the property which had become hers as the sole beneficiary of his estate; that Robert Lucas holds these proceeds under the terms of an undisclosed trust for Evelyn Lucas; and that the plaintiff is therefore entitled to reach the proceeds.

The trial court found the conveyances from Charles C. Lukovsky to Micro Data were void. It also found the

property had been conveyed by Micro Data to bona fide purchasers and granted relief directed to the proceeds received by Micro Data, Robert Lucas, and Patricia Lucas from these subsequent conveyances. Previous to the trial on the merits, the trial court granted the application of the plaintiff for the appointment of the receiver for certain real property known as the Villa Rouge Apartments, titled in Micro Data, and received by it as proceeds from the sale of Lukovsky property.

The trial court denied on the grounds of failure of proof relief against Robert Lucas in connection with the transfers by Evelyn Lucas. The court did not make a finding as to what was the specific failure of proof.

The defendant Micro Data on this appeal: (1) Attacks the finding of the court as to the fraudulent nature of the conveyances; (2) asserts the plaintiff was not entitled to maintain this creditor's bill because the basic obligation of Lukovsky was secured by a mortgage lien against certain other property sufficient to satisfy the obligation; (3) challenges the validity of the appointment of the receiver; (4) asserts that because of a certain settlement agreement entered into during the course of this litigation between Charles C. Lukovsky, his wife, Bessie, and the plaintiff, the plaintiff no longer had the status of a creditor of Charles C. Lukovsky and was no longer entitled to the relief prayed for; and (5) claims the release from further personal liability of Charles C. Lukovsky provided for in the settlement agreement operates to discharge Micro Data.

The defendant Robert Lucas appeals from the decree of the court granting relief as against him because he claims he had earlier been ordered dismissed from the action and there was no appeal from that order.

The plaintiff cross-appeals from the denial of relief in connection with the transfers by Evelyn Lucas.

The only defendants who have filed briefs here are Micro Data and Robert Lucas. Such reference to other

parties to the litigation as is necessary will be made as we proceed.

We affirm the judgment of the trial court as to the conveyances to Micro Data. We find against Robert Lucas and for plaintiff on its cross-appeal.

The bill of exceptions and pertinent portions of the transcript have been carefully read. The record is of such size that it is more than one person can conveniently carry. We will make no attempt to completely summarize the evidence, but will give simply an outline of the underlying facts and from time to time give examples of the nature of the evidence. Sometimes this will be done in conclusionary form.

This case is in equity and it follows that on appeal to this court we are required to retry the issues of fact de novo. § 25-1925, R. R. S. 1943. The trial court did, in connection with the conveyances to Micro Data, make specific and detailed findings of fact. In reviewing those findings insofar as the credibility of witnesses is concerned we take into consideration that the trial court observed the witnesses and their manner of testifying. Erickson v. Tyler, 186 Neb. 743, 186 N. W. 2d 123.

The evidence in this case shows a tangled web. Plaintiff for its proof had, after extensive discovery proceedings, to rely to a large degree upon inferences drawn from the evasive and sometimes contradictory testimony of the defendants together with similar testimony from persons closely associated with the defendant Micro Data. That testimony, together with certain documentary evidence and the testimony of some disinterested witnesses as to certain aspects of the case, forms the basis for the conclusions which the plaintiff draws and which the trial court accepted as they relate to the transfers by Lukovsky to Micro Data, but rejected as they relate to the Evelyn Lucas property.

The Conveyances to Micro Data

Since we accept the finding of the trial court on this

aspect of the case, we here give only an outline of the evidence and its general nature.

The transaction which ultimately gave rise to this action had its origin in a loan of $360,000 made in 1965 by the plaintiff to the defendant First Cadco Corporation. The loan was secured by a first mortgage on real estate of the corporation in Lincoln, Nebraska. The note evidencing the loan was signed not only by the mortgagor, but also by Charles C. Lukovsky, Evelyn Lucas, and certain other individuals. All these persons and the individual defendants in this action are closely related. The purpose of having Lukovsky and the others sign the note was to guarantee its payment.

Lukovsky was a man of considerable wealth. In 1965 he owned 2,300 acres of farmland in Harrison County, Iowa. He had made loans to relatives and also had guaranteed loans to First Cadco Corporation in addition to that previously mentioned. These totaled more than $500,000. He was called upon to make good upon these guarantees and began to liquidate his assets to do so. He sold six or seven farms. The obligations, together with the taxes and expenses incurred in the course of liquidation, totaled more than $550,000. The evidence indicates that by August 1969 his sole remaining assets were two Iowa farms totaling about 520 acres. It was the conveyance of these two properties by Lukovsky to Micro Data which the trial court found void.

The plaintiff's loan to First Cadco Corporation came into default and on April 18, 1967, plaintiff commenced an action on the note against First Cadco, Lukovsky, Evelyn Lucas, and others, and on January 2, 1970, obtained a money judgment in the amount of $461,736. Execution was issued and returned unsatisfied.

For convenience and clarity we now identify some of the persons and entities involved. The defendants Robert Lucas and Patricia Lucas are husband and wife. Robert Lucas is a nephew of Dr. Lukovsky. Evelyn Lucas is Robert's mother. Dr. J. F. Lucas, now de-

ceased, was Robert's father. The witness, Calvin Ragle, was the incorporator and president of the defendant Micro Data. He was a friend and associate of Robert Lucas. Wallace Ruffcorn was a tenant on one of the two remaining Iowa farms and became the purchaser from Micro Data of that farm. Chester Investment is a limited partnership and it became the purchaser from Micro Data of the other farm. It conveyed to Micro Data as part of the purchase price real estate known as the Villa Rouge Apartments. This latter property is one of the items which the trial court found was subject to the lien of the plaintiff's judgment.

The trial court found that Robert Lucas and Patricia Lucas, acting through various business entities controlled by them, participated in a plan to and organized the procedure for the fraudulent conveyances, and arranged to receive the proceeds from these conveyances. This finding is compelled by the evidence.

The witness, Ragle, aged 25 at the time of trial, was an acquaintance of Robert Lucas. They had at one time both worked for or were associated with the same trucking company. Ragle at the time of trial had returned to truck driving. Ragle and Lukovsky met on one occasion at the Lucas home, apparently shortly before the various events we now relate transpired. What occurred at that meeting the record does not show.

Micro Data came into existence on September 22, 1969. Ragle was the incorporator and president. He was present when the articles of incorporation were typed by Patricia Lucas from some other articles in the Lucas library. Ragle testified he had consulted with the Lucases prior to forming the corporation, but stated he was only seeking Robert Lucas' advice.

Micro Data was formed for the ostensible purpose of engaging in the business of microfilming business records, but the business was never launched. A few days prior to the incorporation, Ragle, who had no experience in real estate transactions, at the request of

Robert Lucas went to Iowa and looked at the Lukovsky farms. Ragle was paid for these services and other services claimed to have been rendered for Lukovsky on a billing to Lukovsky by Sales Engineering, an entity or name under which Robert Lucas did business. According to Ragle's testimony he reported to Lucas: "Well, there was—I just reported that there was some farm land there, and that—I mean, what can you report? The farm land was there, it was in cultivation, and that was just about it, it was level." A few days after the incorporation one farm was conveyed by deed to Micro Data and a week or so later the other farm was conveyed.

The purported terms and circumstances of the "sales" are significant. Lukovsky testified the motivation for the sale was his desperate need for money, especially to pay one of the encumbrances on this land. The conveyances were made by warranty deed. Existing mortgages on the land were assumed, including the one which desperately needed to be paid. There was no downpayment. No mortgage was given by Micro Data to Lukovsky, nor lien of any kind retained to secure payment of the unpaid balance which admittedly was in excess of $100,000. There was no formal contract, just a memorandum, signed by Lukovsky and on behalf of Micro Data by Ragle, showing computation of the purchase price, including crops, deduction of the encumbrances (which were overstated by $37,500) assumed, balance due, and a notation of the amount of a monthly annuity payable to the seller. This latter item was, Ragle testified, later changed to a sum certain payable monthly. No interest on the unpaid balance was called for by this modification.

Micro Data had no assets. It had no income, and until it acquired the farms, it had no means of paying the encumbrances or the annuity except from the land itself or its income, or the proceeds of the sale of the farms themselves. Although it purportedly purchased the growing crops, when these were harvested the pro-

ceeds, or a part of them, went to Lukovsky.

In December 1969 Micro Data sold both farms, one to Ruffcorn, the tenant on that farm, and the other to Chester Investment for cash and the Villa Rouge Apartment properties. The evidence showed that after the sale Micro Data would make available to Lukovsky in addition to the monthly payments other sums if he wanted additional money. The trial court found the conveyances to Ruffcorn and Chester Investment were for value and without notice by the purchasers of the fraud in the conveyances by Lukovsky to Micro Data.

The evidence indicates Ragle was a mere figurehead as far as the operation of Micro Data was concerned. Patricia Lucas, the corporation secretary-treasurer, operated it in her own way and to suit her own purposes. Most of the proceeds of the sale to Chester Investment and Ruffcorn ended up in the possession and control of Patricia Lucas or Robert Lucas under the guise of business entities controlled by them. These proceeds are specifically identified in the findings of the trial court and are fully justified by the evidence.

The following are examples: R. Frederick II & Associates, Ltd., was controlled by Patricia Lucas. In the sale to Ruffcorn this entity took a note and mortgage on the farm for a purported loan of $21,900 to help Ruffcorn finance the purchase. It made a check to Ruffcorn in the amount. Ruffcorn made a check to Micro Data for the amount of this purported loan plus the additional downpayment. Micro Data transferred the check or made a check for the amounts to R. Frederick II & Associates.

Robert Lucas had guaranteed to an Omaha bank a note in the amount of approximately $40,000 of a corporation in which he apparently had an interest. Micro Data assumed this obligation, became the principal paper debtor, and began, using the proceeds of the farm sales, to pay off this loan at $500 per month. These payments purportedly were in consideration for services

rendered by Robert Lucas as a consultant to Micro Data. The nature and extent or value of these services is not disclosed. One of the services rendered was the recommendation that Micro Data assume the $40,000 loan so as to establish a credit rating. The $40,000 was shown on Micro Data books as an asset. Contradictory explanations for this are given. Patricia Lucas kept the books. Income from the Villa Rouge Apartments netted about $3,000 monthly. This property was managed for a fee by National Realty, a Lucas entity.

One method used to transfer assets was the purported purchase for cash by Micro Data of the stock of a no-asset corporation controlled by Lucas. A further enumeration of the devices used would unduly lengthen this opinion.

The following principles of law are applicable: Every conveyance made with the intent to hinder, delay, or defraud creditors or persons of their lawful debt or demands is void. § 36-401, R. R. S. 1943.

The question of fraudulent intent in all cases arising under the provisions of sections 36-401 to 36-409, R. R. S. 1943, is a question of fact, and not of law. § 36-406, R. R. S. 1943; First State Bank of Scottsbluff v. Bear, 172 Neb. 504, 110 N. W. 2d 83; Walkenhorst v. Apolius, 175 Neb. 583, 122 N. W. 2d 875.

A creditor may usually follow and subject to his claim the fund or proceeds resulting from a fraudulent conveyance and may pursue the same into any property in which it may have been invested, so far as it can be found. 37 C. J. S., Fraudulent Conveyances, § 32, p. 883; Lambert v. Reisman Co., 207 Iowa 711, 223 N. W. 541.

A conveyance in fraud of creditors may be effected by the organization of a corporation and the transfer of property to it with intent to hinder, delay, or defraud creditors. 37 C. J. S., Fraudulent Conveyances, § 48, p. 898; Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 77 L. Ed. 355, 85 A. L. R. 128.

The provisions of sections 36-401 to 36-409, R. R. S. 1943, do not impair the title of a purchaser for valuable consideration unless the purchaser had previous notice of the fraudulent intent of his immediate grantor, or of frauds rendering void the title of the grantor. § 36-407, R. R. S. 1943.

Inadequacy of consideration is a badge of fraud. Farmers State Bank of Ewing v. Dierks, 137 Neb. 442, 452, 289 N. W. 860, 866.

A conveyance in consideration of an agreement for future support may, where it has the effect of hindering, delaying, or defrauding creditors, be evidence of fraudulent intent. Lincoln Trust Co. v. Sweeney, 124 Neb. 686, 248 N. W. 67; Blanchard v. McMillan, 113 Neb. 275, 202 N. W. 878.

If the value of the property conveyed exceeds the amount of the encumbrances thereon, an agreement by the grantee to pay off the encumbrances is not a valuable consideration as against the grantor's creditors. The ability of the grantee to pay the encumbrance is also a fact to be considered. 37 C. J. S., Fraudulent Conveyances, § 153, p. 973; Buell v. Waite, 200 Iowa 1020, 205 N. W. 974; Holley v. Iron Mountain Co., 332 Mo. 1243, 62 S. W. 2d 740.

A transfer by which a grantor reserves to himself a benefit to the detriment of his creditors may constitute evidence of fraud. Corn Belt Savings Bank v. Burnett, 203 Iowa 271, 211 N. W. 217.

Depending upon the facts and circumstances, one who is the beneficiary of a fraudulent conveyance may be required to account for the rents and profits thereof, including the rents and profits from the proceeds. First Nat. Bank of Plattsmouth v. Gibson, 80 Neb. 577, 114 N. W. 777, reversed on other grounds, 80 Neb. 580, 116 N. W. 1127; Wright v. Salzberger, 121 Cal. App. 639, 9 P. 2d 860; Sakis v. Sawyer, 143 Kan. 813, 57 P. 2d 52; 37 C. J. S., Fraudulent Conveyances, § 279, p. 1113.

Where there is a conveyance between close relatives

without adequate consideration, the burden is upon the parties to the transaction to establish that it was done in good faith. Lincoln Savings & Loan Assn. v. Mann, 129 Neb. 26, 260 N. W. 559; Lincoln Trust Co. v. Sweeney, *supra;* Christensen v. Smith, 123 Neb. 388, 243 N. W. 118.

We conclude as did the trial court that the conveyances by Lukovsky to Micro Data were for the purpose of hindering or delaying and defrauding the creditors of Lukovsky and specifically the plaintiff, and that Micro Data was a knowing party to the fraudulent conveyances as were the Lucases and the entities controlled by them.

We adopt as our own the findings of the trial court as to the specific assets which fraudulently came into possession of the Lucases and their business entities. We find that the proceeds of the sales to Ruffcorn and Chester Investment are subject to the lien of the plaintiff's judgment. We further find that the judgment of the trial court should be generally affirmed, except in the respects hereinafter in this opinion specifically excepted and otherwise dealt with.

### Plaintiff's Standing as a Creditor

The defendant Micro Data contends the plaintiff has no standing to maintain a creditor's bill because of its mortgage on the First Cadco property in Lincoln, which gives it the status of a fully secured creditor. There is some evidence in the record which indicates that at the time the loan to First Cadco was made the Lincoln property had a value of $500,000. There is no evidence of its value at the time of the commencement of this action several years later. Whatever its value, the plaintiff apparently insisted upon personal guarantees and was not relying solely on its security.

Micro Data's contention is not well taken. The fact that the plaintiff in a creditor's bill action does have security does not deprive it of its standing as a creditor under section 36-401, R. R. S. 1943. Lincoln Trust

Co. v. Sweeney, *supra*. Whether the creditor mortgagee will be required to first exhaust the property which it has taken as security before subjecting the fraudulently transferred property to satisfaction of its judgment lien is in equity a matter for the sound discretion of the court. Lincoln Trust Co. v. Sweeney, *supra*. The Nebraska statutes pertaining to mortgage foreclosures seem to contemplate that the mortgage foreclosure proceedings shall be stayed until the proceedings for the collection of the judgment in the law action have been completed and that judgment is satisfied in whole or in part. § 25-2143, R. R. S. 1943. We find that under the circumstances of this case the plaintiff will not be required to exhaust its security by completing the foreclosure proceedings prior to further proceedings in this action. Other courts apparently have taken different views. See Annotation—Fraudulent Conveyances—Secured Creditors, 116 A. L. R. 1048.

There is an additional reason in this case why Micro Data's contention cannot prevail. During the course of these proceedings the plaintiff and Lukovsky entered into a settlement agreement which was in the nature of a covenant by plaintiff limiting its remedies and the properties to which it could have recourse. Under the terms of this agreement Lukovsky and his wife paid the plaintiff $100,000 in partial satisfaction of the judgment. The settlement agreement specifically provided that the plaintiff "reserves the right to pursue all claims asserted by it against Micro Data Corporation and any property transferred to it by Charles C. Lukovsky, including the proceeds of any such property and any amounts or any property that may be found by the Court or by agreement of the First National and Micro Data Corporation to be due to Charles C. Lukovsky or subject to First National's judgment against Charles C. Lukovsky shall. be subject to execution, garnishment or any legal process by First National. Provided, however, it is the intention of the parties hereto that the reservation provided

pertains only to the property and the proceeds thereof now or at any time held by Micro Data Corporation and nothing herein shall be construed to give First National the right to pursue any other property of Charles C. Lukovsky. Any amount or property that may become available to First National through its prosecution of its action against Micro Data Corporation shall be the property of the First National and shall be applied toward the satisfaction of the judgment at Doc. 386 No. 98 in the District Court of Douglas County, Nebraska." By this agreement Lukovsky in effect waived whatever right he may have had to require the plaintiff to first exhaust its mortgage security. As a fraudulent grantee Micro Data's rights cannot rise any higher than those of the fraudulent grantor. We point out that if there is in fact a surplus in the First Cadco property Lukovsky as a paying guarantor would be entitled to reimbursement from the property mortgaged by his principal, First Cadco, to secure the debt which Lukovsky has in part paid.

Micro Data also contends that the settlement agreement itself operates to completely deprive the plaintiff of standing because it is no longer a creditor of Lukovsky. It cites no authority. The provisions of the agreement which we have above quoted, plus those of which we will not make mention, defeat such a position. The agreement specifically provides that the judgment against Lukovsky is not satisfied until either (a) the pending actions are settled, or (b) the judgment itself is satisfied.

### Appeal of the Defendant Robert Lucas

At the close of the plaintiff's case, Lucas moved to dismiss. The motion was renewed at the end of the trial. The court took the motion under advisement and on April 10, 1972, made the following notation in the Journal: "Motion of Evelyn Lucas and Robert Lucas to dismiss is sustained." The plaintiff filed a motion for new trial on April 18, 1972, assigning as error the

sustention of the motion to dismiss. On April 20, 1972, the court took this motion for new trial under advisement. On April 24, 1972, the court entered the decree on the merits which included the following: "All amounts now in the possession of Robert Lucas and/or Patricia Lucas acting individually or under the name of their alter ego, R. Frederick II and Associates, shall be subject to immediate garnishment by plaintiff as amounts owing Micro Data Corporation. . . . Robert Lucas shall account for and repay all and any amounts paid on his behalf to the Omaha National Bank by Micro Data to plaintiff with legal interest, thereon, from the date of payment; such to be applied toward the satisfaction of the judgment debt of Charles C. Lukovsky. . . . The Court has determined that insufficient evidence exists to establish that the proceeds of sale of the Lucas farm are now in the hands of Robert Lucas; however, this determination is without prejudice to any application which may be filed or any action for accounting which may be brought against Patricia Lucas, individually or acting under the name of R. Frederick II and Associates, Ltd. The Court would also acknowledge its reluctance in holding that a failure of proof exists inasmuch as the dismissal of Robert Lucas on this portion is based upon the state of the record only, and not upon the personal belief of the Court."

On April 26, 1972, Robert Lucas and Evelyn Lucas and Micro Data filed motions for new trial. On April 28, 1972, the plaintiff renewed its motion for a new trial. On May 1, 1972, the court overruled all the motions.

Micro Data thereafter filed notice of appeal. Robert Lucas filed notice of appeal. The plaintiff at the appropriate time perfected its cross-appeal by filing the necessary brief in accordance with the rules of this court. Revised Rules of the Supreme Court, 1971, Rules 1d and 8b 3.

Robert Lucas argues that he was finally dismissed

from the case by the entry of the dismissal on the journal on April 10, 1972; that there has been no appeal by the plaintiff from the order overruling the plaintiff's motion for a new trial; that therefore the order of dismissal of April 10, 1972, was a several judgment in his favor and is final; and that this court has no jurisdiction so far as Robert Lucas is concerned.

Lucas cites sections 25-1301 and 25-1303, R. R. S. 1943. He also relies upon the recent decision of this court in Green v. Village of Terrytown, 188 Neb. 840, 199 N. W. 2d 611.

Lucas says the terms of the decree insofar as they affect him are inconsistent with the order of dismissal which had become final.

Plaintiff argues there is no inconsistency and that an oral colloquy (included in the bill of exceptions) between the court and plaintiff's counsel at the time the entry was made on the journal on April 10, 1972, indicates the dismissal was intended to apply only to the transfer of the Evelyn Lucas property and that the decree simply clarifies this.

We do not need to choose between these theories. The plaintiff filed a motion for new trial on April 18, 1972, and renewed it on April 28, 1972. The order of dismissal of April 10, 1972, whether intended by the court to apply to just the Evelyn Lucas transaction or also to the Micro Data transfers had not become final because the motion for new trial had been timely filed and not yet ruled on. This was not the situation in Green v. Village of Terrytown, *supra,* where either no motion for new trial was filed at all, or if it was, it had been ruled on and no appeal was perfected by anyone before the time for appeal had expired.

That is not this case. The trial court had jurisdiction both because the matter was pending on motion for new trial and because it had an inherent power to vacate or modify its decree within the term. Buchanan v. Buchanan, 186 Neb. 89, 180 N. W. 2d 886; Beliveau v.

Goodrich, 185 Neb. 98, 173 N. W. 2d 877; Colby v. Maw, 1 Neb. Unoff. 478, 95 N. W. 677; Weber v. Kirkendall, 44 Neb. 766, 63 N. W. 35. We do not mean to imply, however, that an order vacating a dismissal of a party could be entered within the term under the inherent power without notice to the party. The position of Robert Lucas that the order of dismissal as to him had become a final judgment in his favor is not well taken.

It follows that since Robert Lucas has appealed from the decree of April 24, 1972, the cross-appeal of the plaintiff is properly here under the rules of this court previously cited.

### Plaintiff's Cross-Appeal

An examination of the plaintiff's amended petition clearly indicates that insofar as it relates to the Evelyn Lucas property it pleads a cause combining the two classes of creditor's bills described by this court in Thies v. Thies, 111 Neb. 805, 198 N. W. 151. In this case, one to set aside and reach the proceeds of an alleged fraudulent conveyance, and the other to reach assets on which execution could not be levied.

Evelyn Lucas, a defendant and one of the judgment debtors, did not testify in person. For reasons related to the condition of her health, the parties stipulated as to the nature of her testimony. This stipulation became a part of the plaintiff's case.

Mrs. Lucas was, in the year 1969, the owner as a joint tenant with her husband, J. F. Lucas, of an Iowa farm. It had a fair market value of $144,000. In the late summer of 1969 she conveyed by quit claim deed her interest in the farm to her husband. There was no consideration for this conveyance. Later the property was sold for $144,000. She joined in the conveyance. The proceeds of the sale were received in two checks, one for $34,000, and one for $110,000. Mrs. Lucas was informed (by whom the stipulation does not show) that her husband converted the checks into cash. Approximately $38,000 of the cash was used to pay one-

half of an indebtedness to the Greater Nebraska Corporation on which J. F. Lucas was jointly obligated with Dr. Lukovsky. (This debt was secured by a mortgage on one of the two Lukovsky farms. J. F. Lucas' share of this debt is the amount by which the mortgages assumed by Micro Data were overstated—the Lucas payment having been made before the assumption.)

Testimony of other witnesses showed that J. F. Lucas cashed the check for $110,000 on September 22, 1969, and received 9 $1,000 bills, 52 $500 bills, 400 $100 bills, and 700 $50 bills. Lucas cashed the $34,000 check at another bank. He died in the spring of 1970.

We return to the stipulated testimony. Mrs. Evelyn Lucas would have testified that Robert told her about April 28, 1971, that her husband had made a gift in cash in the amount of $33,000 to Robert's son on October 9, 1969. She knows of no source from which this could have come except from the sale of the farm. Following the death of her husband she searched the home and his office for the money and found no evidence of it. The stipulated testimony does not state that Mrs. Lucas would deny any knowledge of the whereabouts of the remainder of the proceeds of the farm sale. In response to interrogatories Mrs. Lucas had earlier stated that the $110,000 had to the best of her knowledge been used "for living expenses, payment of debts, taxes, legal expense, medical expense, and subsequent funeral expense."

The record shows Mrs. Lucas was the sole beneficiary of her husband's estate.

Employees of various banks testified. This testimony was that on January 2, 1970, Robert Lucas purchased a $15,000 certificate of deposit, using currency in denominations of $100 or more; and that on March 3, 1970, he purchased 15 $1,000 cashier's checks using currency in similar denominations. On April 8, 1970, at the same bank he purchased a $30,000 cashier's check pay-

ing in currency of like denominations. The currency was wrapped in packets like those used by banks. On May 21, 1970, he purchased $35,000 of cashier's checks using a $35,000 U.S. Treasury check which was apparently the proceeds of some U.S. Treasury bills, and on May 26, 1970, he purchased $1,650. On April 15, 1970, Patricia Lucas purchased $15,500 of cashier's checks. Currency was used on all these occasions except on May 21.

Robert Lucas did not testify. Evelyn Lucas was subpoenaed by the plaintiff and claimed excuse for reasons of health. The trial court granted the request over the objection of the plaintiff. As a result the stipulated testimony was received.

On the basis of the foregoing, was the plaintiff entitled to the relief prayed for? We try the matter de novo. It is evident the trial court decided the matter on the basis of the legal sufficiency of the evidence and not on its credibility. Accordingly, no presumptions based on having observed the witnesses apply.

Herewith our analysis. Mrs. Evelyn Lucas, at a time when she was a debtor to the plaintiff, conveyed without consideration her one-half interest in the farms to her husband. At that time she was a party defendant in the action on the First Cadco note. No business or other reason appears for this conveyance. This court has long held that such a conveyance between spouses shifts the burden of proving good faith as well as the consideration for the transaction upon the grantee. Stevens v. Carson, 30 Neb. 544, 46 N. W. 655, 9 L. R. A. 523; Luikart v. Bosse, 142 Neb. 157, 5 N. W. 2d 128. Had J. F. Lucas survived, the burden would have been upon him. At trial it rested upon his successor who, by reason of Lucas' death, is the wife, the original grantor.

The intent with which the conveyance is made may be gathered from the facts and circumstances surrounding it. Smith v. Ely, 164 Neb. 636, 83 N. W. 2d 55. The record supports the conclusion that Mrs. Lucas knew

of and countenanced the unusual step of converting the sales proceeds into cash. Although this occurred after the original conveyance it is relevant and material as pointing to the purpose of the original conveyance. We conclude the evidence is sufficient to show fraudulent intent in the conveyance of her one-half interest in the farm.

The right of the plaintiff to reach the claimed proceeds of the later sale depends upon a determination of whether the money which appears in the hands of Robert or Patricia Lucas at about the time of his father's death is in fact the proceeds of the sale—one-half of which would represent the proceeds of the fraudulent conveyance, and the other one-half representing the property of Evelyn Lucas as beneficiary of her husband's estate and which the plaintiff is entitled to reach in these proceedings because an ordinary execution is ineffective.

We have carefully considered the matter. That Robert Lucas had some contact with his father after the sale proceeds had been reduced to cash is indicated by the fact that it is claimed a gift of $33,000 was made to his young son and that this is the source of the funds used to operate the entity of R. Frederick II & Associates. The possession of the large sums of currency of large denomination at about the time of the death of the elder Lucas could, in the absence of any explanation, be deemed extraordinary. The machinations of Robert and Patricia Lucas in connection with the Lukovsky and Micro Data conveyances is relevant and material as showing purpose and design on their part. Shepard v. Hamaker, 120 Neb. 166, 231 N. W. 761. These transactions were occurring during the same period of time; common motivation and occasion for both are found in the original First Cadco and other transactions, resulting in the disastrous outcome for the Lukovskys and the elder Lucases.

Robert Lucas chose not to testify in his own behalf.

This court has said several times: "In the trial of a civil action, after the plaintiff has introduced evidence tending to prove his case, if the defendant fails to testify to matters peculiarly within his knowledge necessary to his defense, a presumption exists that his testimony, if produced, would militate against his interest, which presumption may be considered by the court or jury trying the case in determining the facts proved." Talich v. Marvel, 115 Neb. 255, 212 N. W. 540. See, also, Alexander v. Turner, 139 Neb. 364, 297 N. W. 589. Other courts have followed the rule. Tinsley v. Bauer, 125 Cal. App. 2d 714, 271 P. 2d 110.

Robert Lucas' failure to give any explanation weighs against him. The record shows that in 1970 Lucas had an income less than $600. The simple fact of the transaction by Lucas in cash without more would probably not be sufficient. But as we have already pointed out, there is other evidence tending to show motive, opportunity, and design. The possession of the funds then becomes material and is competent evidence. It is not necessary to have evidence which specifically identifies these funds as the proceeds. A reasonable and logical inference that they are is raised from the evidence. This is not unlike the rule which is applied in cases of criminal prosecution for embezzlement or burglary. See, Annotation: Evidence—Money—Accused's Possession, 91 A. L. R. 2d 1046; Dockerty v. People, 96 Colo. 338, 44 P. 2d 1013; Hansbrough v. United States (8th Cir.), 156 F. 2d 327. Similar rules have been applied in civil cases. Tinsley v. Bauer, supra.

We find that the proceeds of the sale of the Lucas property were in the possession of Robert Lucas in 1970, and he should be required to account for the same. Accordingly, the order of the court dismissing him from the action is reversed.

The Receivership

Micro Data complains the court erred in appointing a receiver for the Villa Rouge Apartment property.

574

Various objections are made. All, of course, fail with our decision in the appeal of Micro Data on the main issue. Micro Data as a fraudulent grantee has no interest in the Villa Rouge Apartments unless there is a surplus after satisfaction of the plaintiff's judgment. The appointment of a receiver was not erroneous and Micro Data is in no position to complain of it.

\* \* \* \* \*

Micro Data has made 51 assignments of error. Such of the claims of alleged error as are not included within what is previously decided in this opinion have been found to be without merit.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR FURTHER PROCEEDINGS.