UNITED STATES of America, Plaintiff,

v.

The ESTATE OF Lenna L. KIME, Marlin Kime, Elaine D. Kime; Gilbert Michael Kime, a/k/a G. Michael Kime or Michael Kime; Kime Farms, Inc.; Marlin Kime, as trustee for G. Michael Kime; Elaine D. Kime, Michael G. Kime Irrevocable Trust; Cass County Treasurer; Cass County Attorney; National Account Systems; Todd M. Anderson; Nehawka Bank; State of Nebraska, Department of Revenue, Defendants.

No. 4:CV95–3054.

United States District Court,
D. Nebraska.

Dec. 13, 1996.

Robert D. Metcalfe, Tax Division, U.S. Department of Justice, Washington, DC, for U.S.

Marlin Kime, Nehawka, NE, pro se.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The government has filed a second motion for partial summary judgment. With one exception, I shall grant the government's second motion for partial summary judgment. My reasons for this decision are set forth in the following portions of this memorandum.

### I. Background

The government sued to collect estate taxes, impose personal liability on a fiduciary who failed to pay the taxes, and set aside fraudulent conveyances. Ultimately, the government hopes to sell real estate previously owned by the fiduciary in order to satisfy the tax debt.

### A. Issues

I granted the government's first motion for partial summary judgment. (Filing 78.) I found that judgment should be entered for the government and against the Estate of

Lenna L. Kime, Marlin Kime, personal representative, for the unpaid assessed balance of federal estate taxes and related interest and penalties in the amount of $205,007.14, plus penalties and interest. Final judgment was deferred.

In its second motion for partial summary judgment, the government seeks: (1) a determination that Marlin Kime, also known as Marlin G. Kime ("Kime"), is personally liable for the federal estate tax liabilities of the Estate of Lenna L. Kime; and (2) a determination that various conveyances were fraudulent as to the government and a declaration that these conveyances are void.

### B. Undisputed Facts

The material facts of this case are undisputed. (Filings 65, 66.) In addition, the pretrial conference order signed by the Estate of Lenna L. Kime, Marlin Kime, Kime Farms, Inc., Marlin Kime as trustee for G. Michael Kime, Marlin G. Kime Irrevocable Trust, Elaine D. Kime, Elaine D. Kime as trustee for G. Michael Kime, and Gilbert Michael Kime sets forth the same uncontroverted facts, (Filing 80, ¶¶ D1–D107),[1] as proposed in the government's second motion for partial summary judgment. The uncontroverted facts set forth in the pretrial conference order are adopted as the material undisputed facts for purposes of the second partial motion for summary judgment. Following is a summary of the most important undisputed facts:

1. Marlin Kime was the sole devisee of his mother, Lenna Kime, and the personal representative of her estate. Kime received $6,796.58 for his services as personal representative. Kime was also a farmer.

2. Marlin Kime filed a federal estate tax return for his mother's estate on February 9, 1982, showing a federal estate tax liability of $46,660.96. On April 12, 1993, Kime consented to the assessment of additional taxes in the sum of $93,574.35. Thus, on April 12, 1993, Kime admitted the estate owed the government $140,235.31. On the federal estate tax return Kime asserted, and the government does not dispute, that some of the taxes could be paid in installments using a so-called "section 6166" deferral election.

3. On April 29, 1983, soon after he had consented to the assessment of additional federal estate taxes, and one day after those additional taxes were formally assessed, Kime distributed to himself all the assets of his mother's estate. The value of these assets was substantially more than the amount owed the government. Kime valued the assets at $653,536.15. On the receipt he gave in exchange for the assets, Kime promised to pay an amount equal to the value of the distribution or such lesser amount as would fully satisfy any taxes owed by the estate.

4. Included in the assets Kime received were shares of stock in Kime Farms, Inc., which Kime valued at $560,510.40. This stock constituted a controlling interest in Kime Farms, Inc.

(a) Immediately before the death of Lenna L. Kime on May 4, 1981, the stock of the corporation was owned as follows: (i) Lenna L. Kime owned 6,869 shares of stock constituting approximately 68.69 percent of the issued and outstanding stock of the corporation; (ii) Marlin Kime owned 2,871 shares of stock constituting approximately 28.71 percent of the issued and outstanding stock of the corporation; (iii) Elaine D. Kime owned 130 shares of stock constituting approximately 1.3 percent of the issued and outstanding stock of the corporation; and (iv) Marlin Kime as trustee for Michael G. Kime owned 130 shares of stock constituting approximately 1.3 percent of the issued and outstanding stock of the corporation.

(b) Immediately after distribution of the stock from the estate to Kime, the stock was held as follows: (i) Kime held 9,740 shares of stock or approximately 97.4 percent of the total stock; (ii) Elaine D. Kime

---

1. Todd M. Anderson was served with summons and entered his appearance, (Filings 12, 18), but failed to attend the pretrial conference or dispute the facts proposed by the government in its second motion for partial summary judgment. Consequently, under the provisions of Federal Rules of Civil Procedure 16(e) and 56(e), Anderson is bound by the pretrial conference order and is not entitled to dispute the facts proposed by the government in support of the motion for summary judgment.

owned 130 shares of stock or approximately 1.3 percent of the total stock; and (iii) Marlin Kime as trustee for Michael G. Kime held 130 shares of stock or approximately 1.3 percent of the total stock.

5. After receiving the shares of stock in Kime Farms, Inc., and without paying the government the taxes he owed as a distributee of the estate, Kime, as president of Kime Farms, Inc., and his wife, Elaine D. Kime, as secretary, executed a deed from Kime Farms, Inc., to Kime, his wife, and Kime as trustee for his son Michael Kime. The deed was dated April 27, 1983. By virtue of that conveyance Kime received in his individual capacity a 97.4 percent interest in certain real estate, his wife received a 1.3 percent interest, and Kime, as trustee for his son, received a 1.3 percent interest. On April 29, 1983, one day after additional federal estate taxes were formally assessed, the deed was filed with the register of deeds of Cass County, Nebraska.

6. The register of deeds was informed that the purchase price for the real estate conveyed by Kime Farms, Inc., was "0" and that the transfer was in consideration of an "exchange in common stock redeemed pursuant to a corporate dissolution."

7. After the April 27, 1983, conveyance, various corrective measures were taken to cure perceived title defects.

8. In December, 1987, and again in March, 1992, Kime and his wife, Elaine D. Kime, sought protection under Chapter 11 of the bankruptcy laws, but each petition was involuntarily dismissed. In both proceedings the government asserted that Kime was personally liable for the unpaid federal estate taxes.

9. The Kimes' second bankruptcy petition was dismissed on April 21, 1993. The bankruptcy court barred Kime and his wife from filing a similar petition for 180 days. On June 7, 1993, Kime transferred his entire interest in the real estate he had received from Kime Farms, Inc., to his wife, Elaine D. Kime, for stated consideration of $5.00.[2]

10. On June 25, 1993, for stated consideration of $1.00, Elaine D. Kime transferred to her son, sometimes known as Gilbert Michael Kime, all of her interest in certain real property comprising part of the property she had received from Kime Farms, Inc., and her husband.

11. On September 17, 1993, for stated consideration of $1.00, Elaine D. Kime transferred to Todd Anderson a 24–percent interest in certain real property ostensibly[3] comprising part of the property she had received from Kime Farms, Inc., and her husband.

Anderson admitted in a deposition that he was unaware of the transfer.

12. Marlin Kime has continued to receive all cash rentals for the farm property that is the subject of this action although he no longer owns a record interest in the property. Kime received these cash rentals at various times when Kime Farms, Inc., Elaine D. Kime, Gilbert Michael Kime, and Todd Anderson appeared to claim some right, title,

**2.** The transfer was accomplished by two quit-claim deeds.

**3.** I call the attention of the government to a possible problem with tax lot 9 in the SE¼ of the SW¼ of Section 8, Township 10 North, Range 13 East of the 6th P.M. in Cass County, Nebraska. It appears Lenna L. Kime never owned tax lot 9 because the conveyances described in the complaint "except" "Lot 9." *Compare* compl. ¶ 4 *with* ¶ 36. Moreover, it appears Lenna L. Kime did not convey lot 9 to the corporation when she transferred her real estate to Kime Farms, Inc.; that is, the lot is "excepted" in the conveyance. (*See* Filing 80 at 14, ¶ D.) Furthermore, it appears the deeds from Kime Farms, Inc., to Marlin Kime and others did not purport to convey lot 9. (*Id.* at 57, 66, 68.) It also appears the conveyance from Marlin Kime to his wife did not include tax lot 9. (*Id.* at 80–81.) Thus, when Elaine D. Kime transferred her interest in tax lot 9, I question whether she had any interest in the property that she could convey. While Mrs. Kime's transfer of tax lot 9 is fraudulent as to the government to the extent that her title to the property came from her husband, it may well be that none of the defendants had any legitimate interest in tax lot 9 at any time. If this is true, the government would have no legitimate interest in tax lot 9 even though the defendants may have purported to convey the property; that is, the government's claim to the property is only as strong as the defendants' interest in the property. The government should take steps to clarify this situation if for no other reason than to insure that title to tax lot 9 is not improperly clouded by the government's suit.

or interest in the property by virtue of the previously described conveyances.

13. On July 15, 1994, the government sent Kime a demand for payment for either the value of the property he received from the estate or the federal estate tax liability. Kime refused to pay either sum.

14. Summary judgment was entered against the Estate of Lenna L. Kime for the unpaid assessed balance of federal estate taxes, penalties, and interest, with interest and penalties continuing to accrue. The summary judgment amount was $205,007.14, plus penalties and interest.

## II. Law

I shall first examine whether Kime is personally liable for the taxes and related penalties and interest the government seeks to collect. I shall then decide whether the conveyances the government attacks were fraudulent and whether they may be set aside. I turn to those tasks now.

### A. Personal Liability

■ The government asserts Kime is personally liable for the taxes, penalties, and interest it seeks to collect because: (1) he caused the Estate of Lenna L. Kime to be insolvent when he distributed all the assets to himself; (2) he knew the estate owed the government estate taxes when he made the distribution to himself; and (3) he therefore became personally liable for the taxes, penalties, and interest under the provisions of 31 U.S.C. § 3713(b). I agree.

Title 31 U.S.C. § 3713(b) states that a personal representative "paying any part of a debt of the ... estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." Thus, 31 U.S.C. § 3713(b) makes a representative of an estate personally liable for taxes, penalties, and interest if the government proves three things: (1) the personal representative distributed assets of the estate; (2) the distribution rendered the estate insolvent; and (3) the distribution took place after the personal representative had notice of the government's claim. *See, e.g., United States v. Coppola*, 85 F.3d 1015, 1020 (2d Cir.1996) (executor's distribution of estate assets to family members, rendering

estate insolvent, before satisfying estate tax debt to the United States violated 31 U.S.C. § 3713(b) and made the personal representative personally liable for the taxes).

The government has proved all three elements in this case. Kime distributed the estate's assets to himself at a time when he had admitted in writing that the estate owed the government $140,235.31. The estate became insolvent when all its assets were distributed to Kime. Moreover, on the receipt he gave for the distribution, Kime admitted he was obligated to pay an amount equal to the value of the distribution or such lesser amount as would fully satisfy any taxes owed by the estate. As a result, Kime is personally liable to the government.

Kime's liability cannot exceed the value of the assets he received. *Coppola*, 85 F.3d at 1020 ("Of course, the executor's liability is limited to the extent of the payment or value of the assets he distributed from the estate prior to the payment of the taxes."). Nevertheless, because the value of the stock Kime received from his mother's estate substantially exceeded the amount of the taxes then (or now) owed, I will impose liability on Kime for the full amount of the government's claim.

In short, the government is entitled to a judgment of personal liability against Kime for the full amount of its claim. Given the previous summary judgment ruling, Kime is liable to the government for $205,007.14, plus penalties and interest.

### B. Fraudulent Transfers

Claiming to be an existing creditor of Kime in his individual capacity, the government attacks four series of transfers as fraudulent, seeking to set aside each transfer. I find and conclude that three of the four series of transfers were fraudulent to the extent they conveyed any interest in real property Kime had received from Kime Farms, Inc., and that three of the series of transfers should be set aside. As to the fourth series of transfers, I find and conclude that the undisputed facts create a trial issue.

The government asserts that Nebraska law applies. I assume the government is correct. *See F.P.P. Enters. v. United States*, 830 F.2d 114, 117–18 & n. 4 (8th Cir.1987) (in a wrong-

ful levy action, the court of appeals applied Nebraska law to the government's defense that certain transfers to trusts were fraudulent; thus the government had the right to levy upon the trusts and the trusts lacked standing to bring the wrongful levy action). With the choice-of-law question resolved, I turn to the application of Nebraska law to each of the four transfers.

### 1993 Transfers

Initially, I will examine the three transfers that took place in 1993. Those transfers were: (1) Kime's transfer to his wife, Elaine D. Kime, on June 7, 1993, of all his interest in the property he had received from Kime Farms, Inc. (more particularly described in Filing 80, ¶¶ D57, D66); (2) Elaine D. Kime's transfer to her son, Gilbert Michael Kime, on June 25, 1993, of all her interest in certain real property comprising part of the property she had received from her husband (more particularly described in Filing 80, ¶ D83); (3) Elaine D. Kime's transfer to Todd Anderson on September 17, 1993, of a 24–percent interest in certain real property ostensibly comprising part of the property she had received from her husband (more particularly described in Filing 80, ¶ D86).

### Uniform Fraudulent Transfer Act

In 1993 the Nebraska law of fraudulent conveyances was found in the Uniform Fraudulent Transfer Act (UFTA). Neb.Rev. Stat. §§ 36–701–712 (Reissue 1993). *See* 7A *Uniform Laws Annotated* at 639–67 (West 1985) (setting out the history of UFTA, collecting cases that interpret it, and describing various state formulations of it).

### Liability of Debtor

Nebraska law authorizes a creditor whose claim arose before the questioned transfer[4] to avoid (set aside) a transfer of the debtor, Neb.Rev.Stat. § 36–708(a)(1), when the transfer was fraudulent under the provisions of Neb.Rev.Stat. § 36–706(a). Transfers are fraudulent under Neb.Rev.Stat. § 36–706(a) when two things are proved. The creditor must prove: (1) the debtor did not receive reasonably equivalent value in the exchange; and (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. We presume a debtor is insolvent if the debtor is not paying his or her debts as they become due. Neb.Rev. Stat. § 36–703(b).

If a transfer is proved "fraudulent" under Neb.Rev.Stat. § 36–706(a), the creditor may "avoid" the transfer, "attach[ ] ... the asset transferred," and seek a receiver "to take charge of the asset transferred...." Neb. Rev.Stat. § 36–708(a)(1), (2), and (3). Once a judgment against the debtor is obtained, the court may permit the creditor to "levy execution on the asset transferred...." *Id.*, § 36–708(b).

### Liability of Transferee

A transferee has three defenses[5] against a creditor who has proved a debtor is liable to the creditor under Neb.Rev.Stat. § 36–706(a).[6] When a creditor proves a debtor is liable under section 36–706(a), and the transfer can therefore be avoided under section 36–708(a)(1) as to the debtor, the transferee-

---

4. At the very least, the government's "claim," Neb.Rev.Stat. § 36–702(3), "arose" within the meaning of Neb.Rev.Stat. § 36–708(a) when the government asserted its claim against Kime personally in the earlier bankruptcy proceedings. Therefore, when the 1993 transfers were made, the government was a "present" creditor of Kime's within the meaning of § 36–708(a).

5. In addition to the defenses mentioned in the text, to the extent the transferee paid something of value (although less than reasonably equivalent value), then "[n]otwithstanding voidability of a transfer," a "good faith transferee ... to the extent of the value given the debtor for the transfer" has a lien or set-off for such value. Neb. Rev.Stat. § 36–709(d). However, § 36–709(d) is not a defense to a judgment. Even if § 36–

709(d) applies, the creditor is still entitled to a judgment against the transferee unless the defenses mentioned in the text apply, but the impact of the creditor's judgment on a "good faith transferee" may be diminished by the value of the lien or set-off created by this section. This provision is meaningless here because the transferees gave only nominal value.

6. There are separate and distinct statutory predicates for liability under Nebraska law and the UFTA. In turn, it must also be understood that there are separate and distinct statutory defenses for a transferee that are not necessarily applicable to each ground of liability. For example, the transferee defense provided in § 36–709(a) pertains to liability premised on § 36–705(a)(1), not to liability premised on § 36–706(a).

defendant can escape liability, including avoidance, if:

(1) the transferee (a) was a "subsequent" transferee (did not take the transfer directly from the debtor), and (b) was either (i) a "good faith transferee who took for value," or (ii) can prove there was a "good faith transferee who took for value" in the transfer chain before the transferee-defendant received the transfer,[7] Neb.Rev.Stat. § 36–709(b)(2); or,

(2) the transfer resulted from certain defined lease terminations by virtue of the debtor's default, id., § 36–709(e)(1); or,

(3) the transfer resulted from enforcement of a security interest according to the Uniform Commercial Code. Id., § 36–709(e)(2).

Thus, as to the "first transferee," if liability regarding a debtor is proved under section 36–706(a), and the "first transferee" does not have the defenses provided by section 36–709(e)(1) or (2) concerning lease terminations or enforcement of security interests, then "judgment may be entered against" the "first transferee" just as if the transferee were the debtor. Neb.Rev.Stat. § 36–709(b)(1). Likewise, judgment predicated on proof of a debtor's liability under section 36–706(a) may be rendered against a "subsequent transferee" just like the debtor or the first transferee when: (1) the subsequent transferee is not a "subsequent good faith transferee for value"; (2) there is no previous "subsequent good faith transferee for value" in the transfer chain; and (3) the lease termination/security interest enforcement exceptions are not applicable. Id., §§ 36–709(b)(2) & (e)(1) & (2). In each case the amount of the judgment against the transferee (whether a first or a subsequent transferee) is the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. Id., § 36–709(b).

### June 7, 1993, Transfer

■ With these principles in mind, I turn to Kime's transfer to his wife on June 7, 1993. The government has proved that: (1) Kime did not receive reasonably equivalent value in the exchange; and (2) Kime was insolvent at the time of the transfer. Therefore, Kime is liable to the government under section 36–706(a).

The record reveals Kime received five dollars for the transfer at most. This sum obviously did not constitute reasonably equivalent value. By virtue of this transaction, Kime in effect transferred his 97.4–percent interest in Kime Farms, Inc., to his wife. His mother's interest, which Kime inherited and which was part of his total interest in the corporation at the time of the transfer, was valued by him at well over half a million dollars. Thus, Kime transferred to his wife property having a value of more than half a million dollars and received in exchange no more than five dollars. Kime did not receive, and his wife did not pay, reasonably equivalent value.

Also, given that (a) Kime (and his wife) had twice unsuccessfully sought Chapter 11 bankruptcy protection before the transfer; (b) the government asserted a claim for taxes against Kime personally in both cases but was not paid; (c) the last bankruptcy proceeding was dismissed in April, 1993; and (d) the bankruptcy court barred Kime and his wife from filing another bankruptcy petition within 180 days of the dismissal, Kime was "insolvent" under Nebraska fraudulent conveyance law at the time he made the June 7, 1993, transfer.

---

7. Under "[s]ection 8(b) of the UFTA" (§ 36–709(b) of Nebraska law), a "subsequent transferee who received fraudulently transferred property from a good faith subsequent transferee need not be a good faith transferee to receive the protections of § 8(b)(2)." Robert J. Rosenberg, *Avoidance of Preferences and Fraudulent Transfers: Uniform Fraudulent Transfer Act,* 449 PLI/Comm. 419, 490–91 (1988). This means a "second (or third, etc.,) subsequent transferee" who received a transfer *after* a "subsequent good faith transferee who took for value" is not liable to a creditor under § 36–706(a) even if the "second subsequent transferee" did not act in good faith. Conversely, assuming no lease termination/security interest defenses, a "second subsequent transferee" will always be liable to a creditor who has proved liability against a debtor under § 36–706(a) *unless:* (1) there was a prior "subsequent ... good faith transferee who took for value" in the transfer chain; or (2) the "second subsequent transferee" was himself (herself) a "good faith transferee who took for value."

As the "first transferee," Mrs. Kime has no defense because it is apparent that defenses provided in section 36–709(e) regarding lease terminations or enforcement of security interests are not applicable. Thus, as "the first transferee of the asset," "judgment may be entered against" her. Neb.Rev.Stat. § 36–709(b)(1).

In summary, the government has proved the June 7, 1993, transfer fraudulent within the meaning of section 36–706(a). Mrs. Kime has no defenses under Neb.Rev.Stat. § 36–709. Therefore, the government is entitled to avoid Kime's June 7, 1993, transfer to his wife under the provisions of Neb.Rev.Stat. § 36–708(a)(1).

### June 25, 1993, Transfer

■ I next examine Elaine D. Kime's transfer to her son of certain of the property she received from her husband.[8] This transaction took place on June 25, 1993. As to this transaction, the government seeks to set aside the transfer in the hands of the son, who is a remote transferee from debtor Kime.

Since the initial transfer from Kime to Mrs. Kime may be set aside pursuant to Neb.Rev.Stat. § 36–708(a)(1) and judgment rendered against her pursuant to Neb.Rev. Stat. § 36–709(b)(1), Mrs. Kime has no defense to the second transfer. As the Nebraska Supreme Court has said, the rights of a "fraudulent grantee" "cannot rise any higher than those of the fraudulent grantor." *First Nat'l Bank of Omaha v. First Cadco Corp.,* 189 Neb. 553, 566, 203 N.W.2d 770, 780 (1973) (applying predecessor statutes). Since Kime had no right to transfer the property to Mrs. Kime in violation of section 36–706(a), Mrs. Kime had no right to transfer the property to her son.

As to the son, his only conceivable defense is as a "subsequent transferee" under the provisions of Neb.Rev.Stat. § 36–709(b)(2).

To have a defense under section 36–709(b)(2), the son must be a "subsequent transferee" who is both a "good faith transferee" and one "who took for value," or there must be such a transferee between the son and the debtor in the transfer chain. *Id.*

It is undisputed that there was no "good faith transferee for value" between the son and the debtor in this case. As noted earlier, judgment can and will be entered against the only other transferee, Mrs. Kime.

Furthermore, I find and conclude the son was not acting in "good faith." Without sufficient explanation, the absence of "good faith" for a transferee is conclusively shown when the undisputed facts establish that: (1) the transfer was between close relatives (particularly where the "debtor," the "first transferee," and the "subsequent transferee" are husband, wife, and son); and (2) the consideration paid by the transferee was not reasonably equivalent to the value of the property transferred. *First Nat'l Bank of Omaha v. First Cadco Corp.,* 189 Neb. at 563–64, 203 N.W.2d at 779 (applying predecessor statutes and holding that "[w]here there is a conveyance between close relatives without adequate consideration, the burden is upon the parties to the transaction to establish that it was done in good faith"). (Citations omitted.)

The son has not satisfied his burden to explain why the transfer in this case was made in "good faith." Moreover, the evidence is undisputed that the transaction was made without adequate consideration being paid by the son, and this alone "is a badge of fraud." *First Nat'l Bank of Omaha v. First Cadco Corp.,* 189 Neb. at 563, 203 N.W.2d at 778. Accordingly, the son has no defense as a "subsequent ... good faith transferee" under Neb.Rev.Stat. § 36–709(b)(2). *See, e.g., First Nat'l Bank & Trust Co. v. Hollingsworth,* 931 F.2d 1295, 1306–07 (8th Cir.1991)

---

**8.** Because I later find that the earlier transfer from Kime Farms, Inc., to Elaine D. Kime of a 1.3–percent interest in real estate cannot be declared fraudulent (at this time), to the extent this later transfer partially involved her undivided 1.3–percent interest, the later transfer was not fraudulent as to that 1.3–percent interest. However, the entire conveyance should be set aside because Mrs. Kime's interest in the real estate was undivided as between the portion she received from her husband and the portion she received from the corporation, and Mrs. Kime made no attempt to convey only that which she may have had a right to convey. If after trial Mrs. Kime's 1.3–percent interest survives the government's claim, she would be entitled to 1.3 percent of the proceeds upon sale of the property.

(applying UFTA adopted in Arkansas and holding, among other things, that under section 8(b) of UFTA (section 36–709(b) under Nebraska law): (1) there was sufficient evidence to support district court's finding that subsequent transfers were not made in good faith; and (2) judgment avoiding the subsequent transfers was affirmed).

As a result, the government is entitled to avoid Mrs. Kime's June 25, 1993, transfer to her son under the provisions of Neb.Rev. Stat. § 36–708(a)(1).

### September 17, 1993, Transfer

■ The government next attacks Elaine D. Kime's transfer to Todd Anderson on September 17, 1993, of a 24–percent interest in certain real property ostensibly[9] comprising part of the property she had received from her husband.[10] This transfer is avoidable as well.

For the reasons described earlier regarding the conveyance between Mrs. Kime and her son, Elaine D. Kime has no defense to this transfer. Simply stated, her right to convey the property could not exceed her husband's, and, given the circumstances, he had none.

Second, like Mrs. Kime's son, Anderson's only conceivable defense is found in Neb.Rev. Stat. § 36–709(b)(2). Again, however, there is no evidence of a "subsequent good faith transferee who took for value" before Anderson.

It is equally clear Anderson was not a "subsequent good faith transferee." Although Anderson is apparently not a "close relative" and therefore the burden of proof does not shift to him as it did to Mrs. Kime's son, the absence of reasonably equivalent consideration for this transfer is a "badge of fraud." *First Nat'l Bank of Omaha v. First Cadco Corp.*, 189 Neb. at 563, 203 N.W.2d at 778. Moreover, Anderson did not know the transfer to him had occurred. It is hard to believe Anderson was a "good faith transfer-

ee" when he did not even know he was a "transferee." Given the "badge of fraud" proved by the lack of equivalent consideration and the fact that Anderson did not know the transfer had been made, I find and conclude Anderson was not a "subsequent ... good faith transferee" under section 36–709(b)(2).

Consequently, the government is entitled to avoid Mrs. Kime's September 17, 1993, transfer to Anderson under the provisions of Neb.Rev.Stat. § 36–708(a)(1).

### April 27, 1983, Transfers

■ The government seeks a declaration that the April 27, 1983,[11] conveyances from Kime Farms, Inc., to Mrs. Kime and to Kime as trustee for his son were fraudulent and should be avoided. Kime Farms, Inc., transferred to Mrs. Kime a 1.3–percent interest in real estate, and the corporation transferred to Kime, as trustee for his son, another 1.3–percent interest as well. The government seeks to set aside both transfers. The government does not, however, attack the corporation's April 27, 1983, transfer to Kime in his individual capacity.

In April, 1983, the Nebraska law regarding fraudulent conveyances was found in the Uniform Fraudulent Conveyance Act (UFCA). Neb.Rev.Stat. §§ 36–601–613 (Reissue 1984). *See* 7A *Uniform Laws Annotated* at 427–638 (setting out the history of UFCA, collecting cases that interpret it, and describing various state formulations of it).

The government has not clearly specified the UFCA provision violated by the challenged transfers. The government could pursue four separate statutory theories. *See* Neb.Rev.Stat. §§ 36–604, 605, 606, 607. In each instance an element of "good faith" is directly or indirectly involved. *Id.*

Before the Estate of Lenna L. Kime became liable for payment of estate taxes, Elaine D. Kime and Kime, as trustee for his

---

9. *See* n. 3, *infra.*

10. *See* n. 8, *infra.*

11. Technically, transfers occur under Nebraska law (UFTA and probably UFCA) when the deed to real estate is recorded. *See* Neb.Rev.Stat. § 36–707(1)(i). However, in this case, the deed

dates and the recording dates, while sometimes different, are not important. I have therefore used the date of the deeds when discussing the transfers. For example, in this transfer, the date of recording was April 29, 1983, but the date of the deed was April 27, 1983.

son, each held a 1.3–percent interest in the assets of the corporation. The challenged transfer documents show the corporation made the transfers as part of a stock redemption that resulted in dissolution of the corporation. In addition, the undisputed facts establish that Lenna L. Kime transferred the subject real estate to the corporation before her death, and, of course, before the time that liability for estate taxes could have arisen.

Consequently, the undisputed facts would permit a fact finder to conclude that: (1) the transferees apparently paid, and the transferor (Kime Farms, Inc.) apparently received, reasonably equivalent value for the transfer since the transferees surrendered their stock for the same percentage of the corporation's assets represented by their stock; (2) the transferor's (Kime Farms, Inc.) interest in the stock (and underlying real estate) arose before the estate's tax debt; and (3) unlike Kime in his personal capacity, the transferees' interest in the stock (and underlying real estate) also arose prior to the estate's tax debt. These undisputed facts raise a triable issue concerning whether the transferor and transferees acted in "good faith." I must therefore deny the motion for summary judgment regarding these transfers.[12]

### III. Summary

To repeat:

1. Pursuant to 31 U.S.C. § 3713(b), Kime has personal liability to the government for the estate taxes owed because as personal representative of the Estate of Lenna L. Kime, he distributed all the assets of the estate to himself; the distribution rendered the estate insolvent; and Kime knew the estate owed the government estate taxes at the time he made the distribution. Since the value of the assets distributed to Kime exceeded the debt to the government, Kime is personally liable to the government for the entire amount of the debt.

2. Kime's transfer to his wife on June 7, 1993, was fraudulent under Neb.Rev.Stat. ¶ 36–706(a) (Reissue 1993) because the government's claim arose before the transfer; Kime did not receive, and his wife did not pay, reasonably equivalent value for the real estate; and Kime was insolvent at the time of the transfer. As the "first transferee" of the property, Elaine D. Kime has no defenses under Neb.Rev.Stat. § 36–709 (Reissue 1993). Accordingly, judgment may be rendered against Kime and his wife under the provisions of Neb.Rev.Stat. §§ 36–706(a), 36–708(a)(1) & (b), and 36–709(b)(1) (Reissue 1993) for, among other things, avoidance of the transfer.

3. Elaine D. Kime's transfer to her son on June 25, 1993, is fraudulent under the provisions of Neb.Rev.Stat. §§ 36–706(a) and 36–709(b)(1) (Reissue 1993) because as the "first transferee" of a fraudulent transfer, her right to transfer the property could not exceed her husband's (the debtor), and he had none. As a "subsequent transferee," the son has no defenses under Neb.Rev.Stat. § 36–709 (Reissue 1993). In particular, because he did not act in "good faith," the son was not a "subsequent good faith transferee who took for value," and there was no such prior "good faith transferee" within the meaning of Neb.Rev.Stat. § 36–709(b)(2) (Reissue 1993). Accordingly, judgment may be rendered against Elaine D. Kime and her son under the provisions of Neb.Rev.Stat. §§ 36–706(a), 36–708(a)(1) & (b), and 36–709(b)(1) & (2) (Reissue 1993) for, among other things, avoidance of the transfer.

4. Elaine D. Kime's transfer to Todd Anderson on September 17, 1993, is fraudulent under the provisions of Neb.Rev.Stat. §§ 36–706(a) and 36–709(b)(1) (Reissue 1993) because as the "first transferee" of a fraudulent transfer, her right to transfer the property could not exceed her husband's (the debtor), and he had none. As a "subsequent

---

**12.** The government's position is inconsistent. *The government attacks the transfers to Mrs. Kime, and Kime as trustee, but does not attack the transfer to Kime in his individual capacity.* This transfer took place at the same time as the others, and apparently for the same reasons. It is likely that the government does not attack the transfer to Kime because allowing this transfer to stand will make it easier for the government to attach the real estate in Kime's (or his transferee's) hands. While the government's decision may make practical sense, it is inconsistent with the claim that the challenged transfers to Mrs. Kime, and Kime as trustee, were fraudulent.

transferee," Todd Anderson has no defenses under Neb.Rev.Stat. § 36–709 (Reissue 1993). In particular, because he did not act in "good faith," Anderson was not a "subsequent good faith transferee who took for value," and there was no such prior "good faith transferee" within the meaning of Neb. Rev.Stat. § 36–709(b)(2) (Reissue 1993). Accordingly, judgment may be rendered against Elaine D. Kime and Todd Anderson under the provisions of Neb.Rev.Stat. §§ 36–706(a), 36–708(a)(1) & (b), and 36–709(b)(1) & (2) (Reissue 1993) for, among other things, avoidance of the transfer.

5. As to the April 27, 1983, series of transfers to Elaine D. Kime and Kime, as trustee for his son, of 1.3–percent interests in real estate, there is a triable issue regarding whether the transferor corporation and the transferees acted in good faith under Neb. Rev.Stat. §§ 36–604, 605, 606 and 607 (Reissue 1984). The triable issue arises because (1) the transferees apparently paid, and the transferor apparently received, reasonably equivalent value for the transfer since the transferees surrendered their stock for the same percentage of the corporation's assets represented by their stock; (2) the transferor's interest in the stock (and underlying real estate) arose before the estate's tax debt; and (3) unlike Kime in his personal capacity, the transferees' interest in the stock (and underlying real estate) also arose before the estate tax debt.

Accordingly,

IT IS ORDERED that:

(1) The government's second motion for partial summary judgment (Filing 64) is granted in part and denied in part as provided in this memorandum;

(2) Judgment is withheld to avoid wasteful multiple appeals.